161 Wis.2d 277 (1991)
468 N.W.2d 190
IN the INTEREST OF A.E.H., a Person Under the Age of 18: P.C. and J.H., Appellants-Cross Respondents-Petitioners,
v.
C.C., Respondent-Cross Appellant.[]
No. 88-2022.
Supreme Court of Wisconsin.
Argued November 27, 1990.
Decided April 17, 1991.
*284 For the appellants-cross respondents-petitioners there were briefs by Linda S. Balisle, Michael S. Heffernan and Stolper, Koritzinsky, Brewster & Neider, S.C., Madison and oral argument by Ms. Balisle.
*285 For the respondent-cross appellant there was a brief by Michael R. Fitzpatrick and Brennan, Steil, Basting & MacDougall, S.C., Janesville and oral argument by Mr. Fitzpatrick.
Guardian Ad Litem brief was filed by Daniel T. Dillon and Nowlan & Mouat, Janesville, for A.E.H. and oral argument by Mr. Dillon.
DAY, J.
This case is before the court on a petition for review of a court of appeals decision, In Interest of A.E.H., 152 Wis.2d 182, 448 N.W.2d 662 (Ct. App. 1989). The court of appeals affirmed an order of the circuit court for Rock County, the Honorable Patrick J. Rude, presiding. The circuit court dismissed an action for custody of A.E.H. on the basis that California, not Wisconsin, has jurisdiction over the custody of the child under the "home state" provision of the Uniform Child Custody Jurisdiction Act (UCCJA).[1] Prior to the Wisconsin *286 custody action, the Wisconsin court had assumed and exercised jurisdiction in temporary guardianship, guardianship, and termination of parental rights (TPR) proceedings involving the child. Also prior to the Wisconsin custody proceeding, the California court had assumed and exercised jurisdiction in its own custody proceeding.
The court of appeals affirmed the circuit court's order of dismissal. Id. at 199. It held that the circuit court's prior guardianship and TPR proceedings were "custody" determinations within the meaning of sec. 822.02(3), Stats. 1987-88,[2] and are governed by the UCCJA. Id. at 194. It held further, that the subject matter in the guardianship and TPR proceedings was so beyond the circuit court's jurisdiction, that "entertaining the actions was a manifest abuse of authority," pursuant *287 to Restatement (Second) of Judgments, sec. 12 (1982).[3]Id. at 196. Under this exception to the doctrine of collateral estoppel, the court of appeals held that the jurisdiction issue could be relitigated. Id. at 195.
The issue presented for review is whether or not Wisconsin has jurisdiction, under the UCCJA, sec. 822.03(1), Stats., over the custody of A.E.H. We hold that the guardianship and TPR proceedings were "custody" proceedings under the UCCJA. We agree with this portion of the court of appeals decision. Additionally, we hold that the circuit court's assumption and exercise of jurisdiction in the guardianship proceeding was in accordance with the UCCJA. The court of appeals held that this was a "manifest abuse of authority." We disagree with the court of appeals that this was a "manifest abuse of authority." Finally, we hold that the circuit court had jurisdiction under the UCCJA to "modify" the California custody decree. Therefore, the court had jurisdiction under the UCCJA over the custody of the child.
*288 The facts of this case are undisputed, and their sequence is critical. On August 2, 1983, A.E.H. was born to H.H. in the state of California. C.C. was named as the father on A.E.H.'s birth certificate, but he did not marry the child's mother, nor did he live with her after the child was born. A.E.H. also has a half-brother who is eighteen months older than she is. The case before us concerns only the jurisdiction over the custody of A.E.H., not her brother.
A.E.H. resided with her mother and brother in Santa Clara County, California, from her birth until May, 1984. From May, 1984, through May, 1985, the children resided with their maternal grandfather and his wife in Missouri, while her mother was on duty at sea with the United States Navy. During that year, the children visited their maternal relatives in Wisconsin several times, including a ten day visit to the farm of their maternal aunt and uncle, P.C. and J.H.
In May, 1985, the children moved back to California to live with their mother. On February 23, 1986, their mother was murdered. The Navy placed the children in temporary custody with the Santa Clara County juvenile authorities, who placed them in separate foster homes in California. Because the Santa Clara County court did not obtain either child's birth certificate, it did not give notice to the putative fathers of any proceedings involving the children.
On February 24, 1986, the Navy informed the children's grandmother of H.H.'s death. She told the children's uncle, not P.C., who contacted the California authorities and inquired about the children's fathers. The authorities stated that they had no information which identified the fathers.
On February 26, 1986, the children's uncle appeared before the Santa Clara juvenile court. He presented *289 H.H.'s will, which named the children's aunt and uncle, P.C. and J.H., as guardians of the children. The "Findings and Order of Referee," signed by Kristine Mackin McCarthy, referee of the juvenile court, shows that the court dismissed the original petition which was filed on February 25, 1986; released the children from the children's shelter to the custody of their uncle; and set aside a jurisdictional hearing which was to have been held on March 14, 1986. The uncle's affidavit describing the return of the children to Wisconsin states:
At that time I presented the documentation I had with me (H.H.'s will and a signed authorization from J.H. to take control, of the children and return them to Wisconsin) to the court and answered their questions to the best of my ability and the extent of my knowledge. The judge then commended my actions on behalf of the children and stated that in her experience she had not seen a family respond so quickly to the type of emergency facing the children. She advised me that any further guardianship procedures would have to be sought in Wisconsin and that the hearing scheduled for March that was indicated on the release order was no longer necessary and it would not be necessary to return the children. As I stated she advised me that all further action would need to occur in Wisconsin.[4]
The children have resided in Wisconsin with their aunt and uncle, P.C. and J.H., since February 26, 1986.
On March 14, the children's uncle contacted the United States Navy in order to obtain the personal *290 effects of the children and their deceased mother. The Navy informed him that a man had appeared on the base, looking for A.E.H. and claiming to be her father. On March 17, 1986, the children's aunt and uncle petitioned the Rock County court of Wisconsin for guardianship of the children. That same day, the children's uncle phoned the United States Naval base and obtained the name and address of the man claiming to be A.E.H.'s father. The uncle then telephoned the Recorder of San Diego County, California, and requested a certified copy of the children's birth certificates.
On March 18, 1986, the Rock County court (Judge Lussow) awarded the aunt and uncle temporary guardianship of the children and scheduled a hearing for guardianship for May 6, 1986. On March 25, 1986, the aunt and uncle's attorney sent the children's fathers, by regular mail, a copy of the notice for hearing on the petition for guardianship. Notice by publication appeared in a San Diego newspaper on April 2, 9, and 16, 1986. In addition, the San Bernardino County Sheriff's Department tried, unsuccessfully, to personally serve A.E.H.'s father.[5] On June 20, 1986, A.E.H.'s father received notice of the petition and hearing for guardianship by express mail, return receipt requested.
Meanwhile, on April 1, 1986, A.E.H.'s father had filed a paternity and custody action in the San Bernardino Superior Court, California. In the petition to the court, the father stated that he had no information concerning any pending custody proceeding, and that he did *291 not know of any party to the proceeding who had physical custody of A.E.H. or visitation rights with respect to her. Notice of the California custody proceeding was filed with the Rock County court on May 6, 1986. On behalf of the estate of H.H., the children's aunt and grandmother made a special appearance in the California court, objecting to the court's jurisdiction and venue.
On April 14, 1986, the Rock County court filed a notice under the UCCJA, sec. 822.06(3), Stats.[6] The notice stated that the Rock County court assumed jurisdiction over the children on March 17, 1986, and appointed their aunt and uncle as temporary guardians. It also stated that the California custody proceeding should be stayed pending determination of the appropriate forum for determination of the child custody issue.
On June 23, 1986, Judge John H. Lussow, Rock county circuit court judge, participated in a telephone conference concerning jurisdiction under the UCCJA with Judge Frank O. Tetley, a court commissioner serving as judge pro tempore of the San Bernardino Superior Court, California. Both judges made findings on the record that their respective courts had jurisdiction over *292 the custody issue of the children. Judge Lussow asserted jurisdiction under sec. 822.03(1)(b) and (c), Stats. Judge Tetley made a finding that the California paternity action was a form of a custody case, and that it was governed by the UCCJA. He asserted jurisdiction over the custody of the children because California is their "home state" and they had significant contacts with that state.
The Rock County court entered a decree of jurisdiction and convenient forum in favor of P.C. and J.H. on July 3, 1986 (nunc pro tunc, June 17, 1986). The decree contained thirty-three findings of fact detailing Judge Lussow's chronology of the events leading to the jurisdictional dispute, along with a series of conclusions of law. The court took jurisdiction over the children and ordered that the actions commenced in California by A.E.H.'s father "are hereby stayed" and that the California court "is directed to cease taking any further action in said cases."
On June 26, 1986, Judge Lussow entered a determination and order appointing the children's aunt and uncle as guardians of the person and property of the children. A.E.H.'s father specially appeared, objecting to the jurisdiction of the court and objecting to further proceedings. He never appealed the court's order.[7]
On November 26, 1986, the aunt and uncle filed a new action in Wisconsin for the termination of parental rights of A.E.H.'s father. The child's father specially appeared, objecting to the court's subject matter and personal jurisdiction. Judge Patrick J. Rude, presiding, adopted Judge Lussow's jurisdictional findings from the *293 guardianship proceeding and found that the court had jurisdiction to hear the matter, and it proceeded to a jury trial. On May 16, 1987, a jury determined that C.C. is the father of A.E.H., and it did not terminate his parental rights.
Meanwhile, on February 2, 1987, the child's father filed an action in the United States District Court for the Western District of Wisconsin. In his complaint, he requested that the orders of the California courts be given full faith and credit in the Wisconsin courts. He also requested the court to declare California as the only state which may properly exercise jurisdiction over the issue of the custody of A.E.H. pursuant to 28 U.S.C. sec. 1738A, the Parental Kidnapping Prevention Act.[8] The *294 court's order granted the aunt and uncle's motion to dismiss, concluding that it did not have subject matter jurisdiction to determine the issue. Crouse v. Creanza, 658 F. Supp. 1522, 1530 (W.D. Wis. 1987).[9]
*295 On June 19, 1987, the child's aunt and uncle filed a motion in Rock County for legal custody of A.E.H.[10] The child's father specially appeared and filed a motion to dismiss, stating that California has jurisdiction over the custody of his daughter and that the issues of the best interests of his daughter and the proper custodian for his daughter have already been litigated in California.
On January 4, 1988, the San Bernardino Superior Court entered a judgment incorporating the Wisconsin jury verdict naming C.C. as the father of A.E.H. The court also awarded C.C. sole custody of his daughter. The child's aunt and uncle appealed. The California Court of Appeals affirmed the decision, holding that California had jurisdiction over the child under the UCCJA because California was the child's "home state." The court stated:
Wisconsin was not exercising jurisdiction in conformity with the UCCJA under any of the listed grounds . . . . Since there was no valid jurisdiction, California did not have to defer to Wisconsin nor do the inconvenient forum provisions apply . . . . Since Wisconsin did not have jurisdiction under its own laws (UCCJA) then California was not required by the FPKPA (the federal Parental Kidnapping Prevention Act) to give full faith and credit to Wisconsin's custody determination.
*296 The child's aunt and uncle petitioned for review to the California Supreme Court.
On October 4, 1988, Judge Rude of the Rock county circuit court dismissed the Wisconsin custody proceeding. He adopted the findings and judgment of the California Court of Appeals and concluded that California is the "home state" of A.E.H. and that California has jurisdiction over the custody of the child. The court ordered all future proceedings regarding placement and custody of the child to take place in California. The order for dismissal was entered on October 7, 1988. On October 18, 1988, the court granted the child's aunt and uncle a stay of enforcement of the court's order for dismissal pending appeal.
The child's aunt and uncle appealed, and her father cross-appealed. The court of appeals affirmed the circuit court's dismissal of the custody action. In Interest of A.E.H., 152 Wis.2d at 186. After reviewing several decisions from other jurisdictions, the court of appeals held that the UCCJA applies to guardianship and TPR proceedings, since these proceedings are "custody" determinations within the meaning of sec. 822.02(3), Stats. Id. at 194. The court of appeals then concluded that the Wisconsin jurisdiction determinations in the guardianship and TPR proceedings were a "manifest abuse of . . . authority," and the jurisdiction issue could be relitigated under the Restatement (Second) of Judgments, sec. 12. Id. at 196.
The court held that in order for the court to assume jurisdiction, one of the four criteria listed in sec. 822.03(1), Stats., had to be met. Under the facts, none of the criteria had been met. Id. at 199. Under subsection (a) of the statute, neither party contested that California was the child's "home state" as defined in sec. 822.03(1)(a), Stats. Id. at 196. Under subsection (b), the *297 child did not have significant contacts with the state of Wisconsin at the time of commencement of the guardianship proceedings. Id. at 196-198. Under subsection (c), there were no facts in the record to sustain a finding of jurisdiction on the basis of an emergency situation or abandonment of the child. Id. at 198. Finally, subsection (d) did not apply because California has jurisdiction as the child's "home state" and it has not declined jurisdiction. Id. The court of appeals concluded that proper jurisdiction of the custody issue lies in California, not Wisconsin. Id. at 199. The child's aunt and uncle then petitioned this court for review.
On October 11, 1988, the child's father filed a motion in Rock County to enforce the California custody decree pursuant to sec. 822.15(1), Stats.[11] The action was stayed by this court pending action on the petition for review. On October 4, 1989, this court granted the petition.
[1-4]
At issue is the Rock county circuit court's exercise of jurisdiction under the UCCJA, sec. 822.03(1), Stats., over the custody of A.E.H. In order for a court to exercise its power over a case, it must have both subject matter jurisdiction and personal jurisdiction. Hester v. Williams, 117 Wis.2d 634, 641, 345 N.W.2d 426 (1984). Subject matter jurisdiction is the power of the court to hear and decide a particular case or controversy. See *298 Seyfert v. Seyfert, 201 Wis. 223, 228, 229 N.W. 636 (1930). It is conferred upon the court solely by the constitution and state statutes. See In Matter of Guardianship of Eberhardy, 102 Wis.2d 539, 548-549, 307 N.W.2d 881 (1981). We note, however, that "[t]he circuit courts of Wisconsin are constitutional courts and, unlike special courts which may be created from time to time by the legislature, under art. VII, sec. 2, are courts of plenary jurisdiction. They `do not depend solely upon statute for their powers.'" Id. at 549 (quoting Stevenson v. Milwaukee County, 140 Wis. 14, 17, 121 N.W.2d 654 (1909)). "No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." Mueller v. Brunn, 105 Wis.2d 171, 176, 313 N.W.2d 790 (1982). Therefore, we are not reviewing whether the circuit court in this case had subject matter jurisdiction to decide the custody of A.E.H. Article VII, sec. 8, of the Wisconsin Constitution makes it clear that the court did possess such jurisdiction over the custody matter. See Eberhardy, 102 Wis.2d at 550.
What we are reviewing then is whether, under the UCCJA, sec. 822.03(1), Stats., it was proper for the Wisconsin circuit court, "which is competent to decide child custody matters" to "make a child custody determination." This "jurisdiction" statute concerns the child's contacts with the state in which the custody determination will be made. A "contacts" analysis is normally performed in the context of personal jurisdiction; i.e., for a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Kulko v. California Superior Court, 436 U.S. 84, 92 (1978) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). For *299 the status adjudication of custody, the UCCJA encourages "maximum contacts" with a state where the custody determination will be made.[12] "There must be maximum rather than minimum contacts with the state." Commissioners Comment to UCCJA sec. 3(a)(2), 9 U.L.A. 145 (1988). This is the policy of the UCCJA, which, as a matter of comity, is meant to:
[a]ssure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and family have a closer connection with another state;
Section 822.01(1)(c), Stats.
[5]
The application of this statutory concept of jurisdiction to the facts of this case is a question of law. Dragoo v. Dragoo, 99 Wis.2d 42, 43, 298 N.W.2d 231 (Ct. App. 1980). The issue should be decided without deference to the circuit court's decision. Ball v. District No. 4, Area Bd., 117 Wis.2d 529, 537, 345 N.W.2d 389 (1984).
We first determine, as did the court of appeals, whether the Wisconsin guardianship and TPR proceedings were "custody proceedings" within the meaning of the UCCJA, sec. 822.02(3), Stats. If so, the other provisions *300 of the UCCJA which control "custody" matters also control the disposition of this case. As noted by the court of appeals, several other states have concluded a guardianship proceeding, with respect to a minor, is covered under the term "custody proceeding" and it must comply with the UCCJA. See Matter of Guardianship of Walling, 727 P.2d 586, 690 (Okla. 1986); Ray v. Ray, 494 So. 2d 634, 637 (Ala. Civ. App. 1986); Gribkoff v. Bedford, 76 Or. App. 695, 711 P.2d 176, 178 (1985); In re Guardianship of Wonderly, 423 N.E.2d 420, 423-424 (Ohio 1981). These states have adopted the UCCJA and have definition of "custody proceeding" similar to Wisconsin's definition.
[6]
More importantly, the Commissioners' comment to the definition of "custody proceeding" under the UCCJA states that "`custody proceeding' is to be understood in a broad sense. The term covers habeas corpus actions, guardianship petitions, and other proceedings available under general state law to determine custody." 9 U.L.A. 134. We conclude that the guardianship proceeding was a "custody proceeding" within the meaning of sec. 822.02(3), Stats.
[7-9]
As for a TPR proceeding, if the parental rights are not terminated, the parent may retain guardianship and custody of the child. If the parental rights are terminated, the court transfers guardianship and custody of the child to another individual or agency. See secs. 48.427(2)-(4), Stats. 198788.[13] The TPR proceeding ultimately determines whether a parent will retain custody *301 and guardianship of a child. Interpreting "custody proceeding" in a broad sense, as the drafters of the UCCJA intended, we conclude that the TPR proceeding was a "custody proceeding" within the meaning of sec. 822.02(3), Stats. Similarly, the determinations reached in the guardianship and TPR proceedings, were "custody determinations" under sec. 822.02(2), Stats. 1987-88,[14] and the decrees the court issued were "custoday decrees" under sec. 822.02(4), Stats.[15]
[10, 11]
Having determined that the Wisconsin proceedings were "custody proceedings" and covered under the UCCJA, these proceedings had to conform with the UCCJA. In determining whether a court may make a "child custody determination" under the UCCJA, it must first ascertain whether the court had jurisdiction under the UCCJA. Priscilla S. v. Albert B., 102 Misc.2d 650, 424 N.Y.S.2d 613, 616 (1980); Holt v. District Court, Etc., 626 P.2d 1336, 1341 (Okla. 1981). The jurisdictional requirements of the UCCJA must be met only at the commencement of the proceedings in this state. Mayer v. Mayer, 91 Wis.2d 342, 349, 283 N.W.2d 591 (Ct. App. 1979).
The "custody proceedings" were commenced on March 17, 1986, when the child's aunt and uncle filed the guardianship petition in Wisconsin. The notice filed pursuant to sec. 822.06(3), Stats., states that the Wisconsin court assumed jurisdiction on that day and it also requested the California court to stay the pending custody proceeding in that state. Judge Lussow stated, on the record during the telephone conference with Judge Tetley, that Wisconsin had assumed jurisdiction over the custody of A.E.H. under sec. 822.03(1)(b) and (c), Stats. *302 decrees" under sec. 822.02(4), Stats.[15]
Having determined that the Wisconsin proceedings were "custody proceedings" and covered under the UCCJA, these proceedings had to conform with the UCCJA. In determining whether a court may make a "child custody determination" under the UCCJA, it must first ascertain whether the court had jurisdiction under the UCCJA. Priscilla S. v. Albert B., 102 Misc. 2d 650, 424 N.Y.S.2d 613, 616 (1980); Holt v. District Court, Etc., 626 P.2d 1336, 1341 (Okla. 1981). The jurisdictional requirements of the UCCJA must be met only at the commencement of the proceedings in this state. Mayer v. Mayer, 91 Wis. 2d 342, 349, 283 N.W.2d 591 (Ct. App. 1979).
The "custody proceedings" were commenced on March 17, 1986, when the child's aunt and uncle filed the guardianship petition in Wisconsin. The notice filed pursuant to sec. 822.05(3), Stats., states that the Wisconsin court assumed jurisdiction on that day and it also requested the California court to stay the pending custody proceeding in that state. Judge Lussow stated, on the record during the telephone conference with Judge Tetley, that Wisconsin had assumed jurisdiction over the custody of A.E.H. under Sec. 822.03(1)(b) and (c), Stats.
*303 [12]
For a finding of jurisdiction under subsection (b) of the statute, "the child and at least one contestant, [must] have a significant connection with this state." Section 822.03(1)(b), Stats. In addition, "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" must be available in this state. Id. According to the Commissioners' comments, subsection (b) "comes into play either when the home state test cannot be met or as an alternative to that test." 9 U.L.A. 144, P.C. and J.H. do not assert that Wisconsin is the child's "home state." Moreover, the record reflects that the child did not live in Wisconsin for at least six consecutive months "immediately preceding the time involved" to meet the "home state" definition under sec. 822.02(5), Stats.[16] Wisconsin therefore could not assume jurisdiction under the "home state" provision.
[13]
The Commissioners' comment also states that under subsection (b), "[s]hort-term presence in the state is not enough even though there may be an intent to stay longer . . " 9 U.L.A. 145. Therefore, the unilateral movement of a child to another state is not enough to confer jurisdiction under subsection (b). Id. The child's father relies on this to show Wisconsin had no jurisdiction under subsection (b). However, the child's presence *304 in Wisconsin is not P.C. and J.H.'s basis for claiming jurisdiction under subsection (b). They claim that Wisconsin should assume jurisdiction because the best interests of the child will be served due to her significant contacts with Wisconsin and her lack of contacts with California. As the Commissioners noted, the child's interest is served "when the forum has optimum access to relevant evidence about the child and family." 9 U.L.A. 145. On March 17, 1986, when the guardianship petition was filed, Judge Lussow had no knowledge of the child's relatives in California. At that time the child would not likely have any present or future personal relationships with anyone in California or perhaps even have any present or future contacts with California at all. After all, A.E.H. was in California because that was the location of her mother's duty assignment from the Navy. She did not have any known relatives in California; Judge Lussow was not aware that she had any relationships with anyone in California; or that evidence of her future care and training would be in California. All evidence concerning the child's present and future care, protection and training was in Wisconsin, since that is where all of the child's then-known relatives lived, including her brother. This, in itself, is a significant connection between the child and Wisconsin. The facts satisfy both parts of subsection (b), enabling the Wisconsin court to assume jurisdiction under the UCCJA.
Even though only one subsection of sec. 822.03(1), Stats., need be satisfied for a finding of jurisdiction, we will examine Judge Lussow's assertion of jurisdiction under subsection (c) of the statute as well. Section 822.03 (1) (c)
retains and reaffirms parens patriae jurisdiction, usually exercised by a juvenile court, which a state must assume when a child is in a situation requiring *305 immediate protection. This jurisdiction exists when a child has been abandoned, and in emergency cases of child neglect. Presence of the child in the state is the only prerequisite.
9 U.L.A. 145.
[14]
Clearly, at the time of the filing of the guardianship petition, A.E.H. was present in the state of Wisconsin. However, the record does not reveal any evidence of mistreatment, child neglect, or abuse necessary to assume jurisdiction in an "emergency" situation. As for abandonment, assumption of jurisdiction would be appropriate if the child were without proper care, custody or support, and in need of immediate protection. See In re B.R.F., 669 S.W.2d 240, 247 (Mo. App. 1984). At the time of the filing of the guardianship petition, A.E.H. was under the care of her Wisconsin relatives. Even though her mother had died and her father was unknown, she had not been "abandoned" in Wisconsin as she may have been in California. The facts do not satisfy the requirements of subsection (c) in order for the Wisconsin court to assume jurisdiction over the custody of A.E.H. under that provision of the UCCJA.
[15]
Finally, although not relied upon by Judge Lussow, we will examine subsection (d) of the jurisdictional statute in our independent review of this case. This section "provides a final basis for jurisdiction which is subsidiary in nature. It is to be resorted to only if no other state could, or would, assume jurisdiction under the other criteria of this section." 9 U.L.A. 145 (emphasis added). We focus on the second section of subsection (d), which refers to a state which has declined to exercise jurisdiction. On February 26, 1986, when the California court released A.E.H. to the custody of her uncle, the court *306 dismissed the original petition regarding placement of the child and, according to the child's uncle, advised him that "any further guardianship proceedings would have to be sought in Wisconsin." This evidence clearly indicates that the court intended to relinquish any jurisdiction it had over the custody of the child and allow Wisconsin to assume jurisdiction. This fact was known to Judge Lussow.
The father of the child contends that the court never relinquished jurisdiction. He relies on the California court's "Judgment and Decree Regarding Jurisdiction" stating that the court did not decline jurisdiction. This document was filed long after the jurisdictional dispute arose between Wisconsin and California. Moreover, it was signed by Judge Leonard P. Edwards, of the Santa Clara County Superior Court, who is not the same person who signed the California custody release. We do not find the document persuasive or conclusive as to whether the California court intended to relinquish jurisdiction when it released the children to their uncle advising him that custody would have to be determined in Wisconsin. We find much more persuasive the document filed on February 26, 1986, dismissing the original petition regarding placement of the child and releasing her to the custody of her uncle. This is the document which was in existence on March 17, 1986, the day the guardianship petition was filed in Wisconsin.
We conclude that at the time the guardianship petition was filed, California had relinquished jurisdiction over the custody of A.E.H., and as previously discussed, it was in the child's best interests that Wisconsin assume jurisdiction. The facts satisfy subsection (d), enabling the Wisconsin court to assume jurisdiction under this portion of the UCCJA.
*307 We hold that at the time the custody proceeding was commenced in Wisconsin (the day the child's aunt and uncle filed the guardianship petition) the jurisdictional requirements of the UCCJA were met under sec. 822.03(1) (b) and (d), Stats., and the Wisconsin court properly assumed jurisdiction over the custody of A.E.H. and her brother.
[16, 17]
After the custody petition is filed, a court which has properly assumed jurisdiction under the UCCJA may nevertheless be required under the UCCJA to decline to exercise that jurisdiction. Priscilla S. v. Albert B., 424 N.Y.S.2d at 616; Holt v. District Court, Etc., 626 P.2d at 1341. This will occur if a custody proceeding is pending in another state, see sec. 822.06(3), Stats., or if the court finds that it is an inconvenient forum and the court of another state is a more appropriate forum. See sec. 822,07, Stats.[17] In both situations the UCCJA calls for *308 the court of the forum state to communicate with the court of the other state and exchange information to the *309 end that the issue is litigated in the more appropriate forum. Sections 822.06(3) and 822.07(4), Stats. The communication may be conducted on the record by telephone conference. Section 822.06(4), Stats.[18]
When Judge Lussow and Judge Tetley participated in the telephone conference, both judges found that their respective state courts properly assumed jurisdiction under the UCCJA and could exercise that jurisdiction. Judge Lussow asserted jurisdiction under the "significant contacts" and "parens patriae" provisions of the UCCJA. We have previously determined that jurisdiction was proper under subsection (c) of the UCCJA, the "significant contacts" provision, and subsection (d). Judge Tetley asserted jurisdiction under the "home state" provision. The drafters of the UCCJA anticipated such a situation occurring:
In the first place, a court in the child's home state has jurisdiction, and secondly, if there is no home state or the child and his family have equal or stronger ties with another state, a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the mechanisms provided in sections 6 and 7 [secs. 822.06 and 822.07, Stats.] are used to assure that only one state makes the custody decision.
9 U.L.A. 144.
*310 [18]
First, under sec. 6 (sec. 822.06, Stats.), "[a] court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter . . . ." (Emphasis added.) On March 17, 1986, when the child's aunt and uncle filed the guardianship petition, the California custody proceeding had not been pending and California had not exercised jurisdiction over the custody of the child. Section 822.06(1), Stats., sec. 6 of the UCCJA, did not prevent the Wisconsin court from exercising jurisdiction over the custody of A.E.H. in the guardianship proceeding because the Wisconsin custody petition was filed first. Other courts have followed this rationale in determining which court should proceed in a jurisdictional deadlock under the UCCJA. Scheafnocker v. Scheafnocker, 514 A.2d 172, 178 (Pa. Super 1986); Hickey v. Baxter, 461, So. 2d 1364, 1369 (Fla. App. 1 Dist. 1984); In Matter of Marriage of Steadman, 671 P.2d 808, 809 (Wash. App. 1983); Revere v. Revere, 389 So. 2d 1277 (La. 1980).
In Steadman, the court noted that:
[t]he UCCJA is not a device by which the singular and exclusive jurisdiction of any state to determine custody can be determined with crystalline finality. Rather, it affords the means by which a court may determine its own jurisdiction by applying a set of rational principles (citations omitted). As between states which have adopted the act, the state in which action is brought first will be permitted to go forward (citation omitted).
*311 671 P.2d at 809. Similarly, in Scheafnocker, the court held that:
[i]t is undisputed that the appellee filed her custody complaint before the appellant's submission of his petition in Texas seeking the same relief. As a result, the Pennsylvania court was not required to decline jurisdiction since in October of 1983 there was no other court which was a more appropriate forum.
514 A.2d at 178. In Revere, the court referred to the jurisdictional deadlock which is present in the case before us.
It is evident that jurisdiction may exist in two different states under the home state and significant connection standards. When this occurs, it is not necessary that the significant connection state defer in every case to the home state. The conflict is avoided by reference to priority of filing . . . .
389 So. 2d at 1280.
Finally the Commissioners' comment to section 6 of the UCCJA specifically refers to a "first to file" priority for a court that has properly assumed jurisdiction under the UCCJA.
When the courts of more than one state have jurisdiction under sections 3 or 14 [sec. 822.03 and 822.14, Stats.],[19] priority in time determines which court will proceed with the action, but the application of the *312 inconvenient forum principle of section 7 [sec. 822.07, Stats.] may result in the handling of the case by the other court.
9 U.L.A. at 220.
Under section 7 of the UCCJA, sec. 822.07, Stats., the inconvenient forum provision, the court may take into account five factors listed in sec. 822.07(3), Stats., to determine if it is in the interest of the child that another state assume jurisdiction. First, the court may consider " [i]f another state is or recently was the child's home state . . . ." Section 822.07(3)(a), Stats. As previously stated, sec. 822.02(5), Stats., defines "home state" for jurisdictional purposes. The "home state" is the state in which the child lived with the child's parents, a parent or a person acting as a parent for at least six consecutive months "immediately preceding the time involved . . .." Section 822.02(5), Stats. The record reflects that the child resided with her mother in California for nine months up to the time her mother died, making California the "home state" under the UCCJA. This first factor weighs in favor of California.
Second, the court may consider " [i]f another state has a closer connection with the child and family or with the child and one or more of the contestants . . .." Section 822.07(3)(b), Stats. The child was born in California and spent nearly half of her life there. Her connection with Wisconsin is that she and her temporary guardians reside in Wisconsin. The "family's" only connection with California is its relationship with the child and her mother who used to be stationed there. California does not have a closer connection with the child and *313 her "family." One of the contestants, the child's thenputative father does have a close connection with California. He resides in that state. His only connection with Wisconsin is that his then-alleged daughter and her relatives reside in this state. Under the statute, California has a closer connection with the child and one of the contestants. The second factor weighs in favor of California as well.
The third factor the court may consider is "[i]f substantial evidence concerning the child's present or future care, protection, training, and personal relationship is more readily available in another state . . . ." Section 822.07(3)(c), Stats. As previously stated, under sec. 822.03(1)(b), Stats., this factor does not weigh in favor of California.
Fourth, the court may consider "[i]f the parties have agreed on another forum which is no less appropriate . . . ." Section 822.07(3)(d), Stats. The parties have not agreed on any forum.
Finally, the court may consider "[i]f the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 822.01." Section 822.07(3)(e), Stats. The general underlying purposes of the UCCJA are avoiding shifting children from state to state, avoiding abductions, litigating custody in the state which has the closest connection with the child and the family, i.e., her maternal relatives, and facilitating enforcement of other state's custody decrees. See generally sec. 822.01(1), Stats. Wisconsin's exercise or jurisdiction would not contravene any of these purposes. In fact, it would be consistent with these purposes. In particular, Wisconsin's exercise of jurisdiction would ensure that the custody of the child is litigated in the state where the child and her "family" have the closest connection, or maximum contacts, and in the state where significant *314 evidence concerning the child's care is readily available. See sec. 822.01(1)(c), Stats. This final factor does not weigh in favor of California.
[19]
Considering all five factors listed in sec. 822.07(3), Stats., it would not have been in the best interests of the child to find Wisconsin an inconvenient forum and move the litigation of custody to California. Therefore, neither of the mechanisms in section 6 nor section 7 of the UCCJA required Wisconsin to decline the exercise of jurisdiction over the custody of the child.
[20-22]
On June 26, 1986, the Wisconsin court exercised its jurisdiction in awarding the child's aunt and uncle guardianship of the child. The child's aunt and uncle have asked us to apply the principles of res judicata and collateral estoppel to the Wisconsin court's original determination of jurisdiction. Under the doctrine of res judicata, or claim preclusion, a judgment "on the merits" bars a second lawsuit involving the same parties based on the same cause of action. Lawlor v. National Screen Service, 349 U.S. 322, 326 (1955). Under the doctrine of collateral estoppel, or issue preclusion, a judgment on the merits between the same parties in a prior suit "precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." Id. In addition, section 12 of the UCCJA, sec. 822.12, Stats., provides that a custody decree is conclusive as to all issues of fact and law decided and as to the custody determination made unless and until that determination is modified.[20]
*315 [23, 24]
Because a custody decree may be modified, it does not have absolute finality; but as long as it has not been modified, it is binding as a final judgment. 9 U.L.A. at 275. As previously determined, the guardianship decree is a "custody decree." The Wisconsin judgment on the merits bars relitigation of guardianship of the child between the same parties. Therefore, the claim of guardianship over the child is res judicata. Under section 12 of the UCCJA, the guardianship decree or "custody decree" is conclusive as to the issue of jurisdiction until it is modified.
[25]
On November 26, 1986, when the child's aunt and uncle filed the TPR action, they were, in effect, requesting a "modification" of the prior custody decreethe Wisconsin guardianship decree. See sec. 822.02(7), Stats. Under sec. 14 of the UCCJA, a court's jurisdiction must be reexamined in order to modify a custody decree. See sec. 822.14, Stats. Judge Rude, faced with the jurisdiction objection in the TPR proceeding, reexamined the court's jurisdiction. He agreed with Judge Lussow's thirty-three findings in the guardianship proceeding and adopted them, concluding that the Wisconsin court had jurisdiction to hear the TPR matter.
[26]
On June 19, 1987, when the child's aunt and uncle filed the petition for legal custody in Wisconsin, they *316 were, in effect, requesting a "modification" of the prior existing custody decreethe California custody decree. See sec. 822.14, Stats. Judge Rude reexamined the court's jurisdiction. This time, he concluded that California was the child's home state and that California, not Wisconsin, had jurisdiction over the custody of the child.[21] He therefore dismissed the action. We do not view this as a collateral attack on Judge Rude's prior determination of jurisdiction in the TPR proceeding or as a collateral attack on Judge Lussow's determination of jurisdiction in the guardianship proceeding. Each proceeding was a separate action, and each proceeding required a separate determination of jurisdiction. Judge Rude's finding of lack of jurisdiction in the aunt and uncle's petition for legal custody did not challenge the prior Wisconsin guardianship and TPR determinations. What it did was serve as a basis of dismissal of the petition for legal custody.
[27]
Moreover, even if Judge Rude's dismissal of the petition for legal custody for lack of jurisdiction could be viewed as a collateral attack on the Wisconsin court's *317 prior jurisdiction determinations, we do not hold that "the subject matter of the action was so plainly beyond the court's jurisdiction" in both the TPR proceeding and the guardianship proceeding that entertaining the actions was a "manifest abuse of authority" pursuant to the Restatement (Second) of Judgments, sec. 12.[22] As the reporter's note to the Restatement observes: "Cases involving plain excess of jurisdiction are rare." Id. at 127. We construe the terms "manifest abuse of authority" narrowly, and reserve their application to egregious cases where a court lacks the power to hear a particular class of case. See, e.g., State v. Bartunek, 12 Ohio App. 2d 141, 231 N.E.2d 326 (1967) (where a probate court ruled on the constitutionality of a city zoning ordinance). Otherwise, every jurisdictional error could arguably be characterized as a manifest abuse of authority, and the exception would be rendered meaningless. However, we conclude that what Judge Lussow did, in his thirty-three findings of fact (which Judge Rude later adopted in the TPR proceeding), is an example of what is not a manifest abuse of authority. As previously determined, Judge Lussow properly determined that the Wisconsin court had jurisdiction over the custody of A.E.H. and properly exercised that jurisdiction.
As the Commissioners' comment to section 6 of the UCCJA states, " [o]nce a custody decree has been rendered in one state, jurisdiction is determined by sections 8 and 14." 9 U.L.A. at 220. Therefore, once the Wisconsin court awarded the child's aunt and uncle guardianship, the exercise of jurisdiction over the custody of the child by another court was governed by secs. 8 and 14 of the UCCJA. California exercised its jurisdiction over the custody of the child on January 4, 1988, when it issued a *318 custody decree. Whether that exercise of jurisdiction was in conformity with section 8 and 14 of the UCCJA is not for us to decide. The effect of the California custody decree though, required the exercise of jurisdiction over the custody of the child by another court to conform with sections 8 and 14 of the UCCJA. The Wisconsin court exercised its jurisdiction over the "custody" of the child again, in the TPR proceeding. However, it is the question of Wisconsin's exercise of jurisdiction in the petition for legal custody of A.E.H. on which we will focus, because this is at issue on review. In order for the Wisconsin court to exercise jurisdiction in that matter, it had to conform with secs. 8 and 14 of the UCCJA. See 9 U.L.A. at 220.
[28]
Section 8 of the UCCJA, sec. 822.08, Stats.,[23] incorporates the "clean hands" doctrine. 9 U.L.A. at 251. "Under this doctrine courts refuse to assume jurisdiction *319 to reexamine an out-of-state custody decree when the petitioner has abducted the child or has engaged in some other objectionable scheme to gain or retain physical custody of the child in violation of the decree." Id. The record does not reflect and the child's father does not contend that the child's aunt and uncle engaged in such conduct in order to retain custody of the child once they were awarded guardianship. Section 822.08, Stats., therefore does not apply.
Section 14 of the UCCJA, sec. 822.14, Stats., deals with the continuing jurisdiction of a court which has rendered a custody decree. Its purpose is to avoid forum shopping and to achieve stability of custody arrangements. 9 U.L.A. at 292. This section:
declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3 [sec. 822.03, Stats.J. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.
Id.
Under sec. 822.14, Stats., the Wisconsin court shall not "modify" the California custody decree unless California has "lost" jurisdiction by not fulfilling the jurisdictional prerequisites of the UCCJA, or unless it has declined to assume jurisdiction to modify the custody decree. The record does not reveal that California has declined to assume jurisdiction to modify its custody decree. However, it may have "lost" jurisdiction because *320 it "does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter . . . ." Section 822.14(1), Stats. It is now appropriate for this court to examine California's jurisdictional contacts under the UCCJA.[24]
[29]
Under sec. 822.14, Stats., jurisdiction must exist at the time the petition for modification is filed. 9 U.L.A. at 293. See also Bull v. Bull, 109 Mich. App. 328, 311 N.W.2d 768, 773 (1981). The petition for modificationthe aunt and uncle's petition for legal custodywas filed on June 19, 1987. At that time, C.C. had already been adjudicated the father of the child, and the child had resided in Wisconsin with her aunt and uncle for nearly sixteen months.
Again, we examine the jurisdictional requirements of sec. 822.03, Stats. to determine, first, whether California had sufficient contacts with the case to satisfy section 3 of the UCCJA. Under sec. 822.03(1)(a), the "home state" provision, California was no longer the "home state of the child at the commencement of the proceeding," June 19, 1987. Id. Immediately proceeding the time involved, the child had lived with her aunt and uncle in Wisconsin for over six consecutive months. See sec. 822.02 (5), Stats.
Under subsection (b) of the statute, the child and her father must have had a significant connection with California, and substantial evidence concerning the child's present or future care, protection, training, and personal relationships had to exist in California. Section 822.03(1)(b), Stats. Again, the child's father resides in California. The child was born in that state and spent nine consecutive months after her birth and nine consecutive *321 months prior to her mother's death in that state. Despite the fact that the child's father lives in California, a substantial amount of evidence concerning the child's present and future care and relationships exists in Wisconsin. By June 19, 1987, the child had spent about a year and a half in Wisconsin. The record reveals that at that time, she had adjusted well to life on her aunt and uncle's farm. She identified the farm as her home, where she lived and played with her brother. She also developed a very close, almost daily connection with her other aunt and uncle that live nearby, and their two children who are close to her age. The child was seen by a psychologist shortly after her return to Wisconsin, and she was diagnosed as having an "Adjustment Reaction With Mixed Emotional Mood." She continues to receive psychological counseling. The record lacks any similar substantial evidence which existed in California.
Third, subsection (c) does not apply because the initial prerequisite that the child be present in California had not been satisfied.
[30]
Finally, California could not assume jurisdiction under subsection (d) either. The first provision would not apply because it appears that Wisconsin then had "home state" jurisdiction. The second provision would not apply either because Wisconsin did not decline to exercise its jurisdiction. California, therefore, did not have sufficient contacts with the case to assume jurisdiction under section 3 of the UCCJA at the time the petition for legal custody was filed in Wisconsin. Under sec. 22.14, Stats., the Wisconsin court was not prohibited from "modifying" the California custody decree. We conclude that the Wisconsin court had jurisdiction to hear and decide the custody matter which was brought by the child's aunt and uncle.
*322 [31]
The child's father claims that under 28 U.S.C. sec. 1738A, the Parental Kidnapping Prevention Act (PKPA), Wisconsin did not have jurisdiction over the custody of the child. The PKPA concerns a state's enforcement of another state's child custody determination. See 28 U.S.C. sec. 1738A(a). It also governs a state's jurisdiction to modify another state's custody determination. See 28 U.S.C. sec. 1738A(f). We consider only the jurisdictional provision and its relation to the case before us. To the extent that the PKPA conflicts with the UCCJA, the PKPA preempts the UCCJA. Sams v. Boston, 384 S.E.2d 151, 156 (W. Va. 1989); Murphy v. Woerner, 748 P.2d 749, 750 (Ala. 1988).
[32]
28 U.S.C. sec. 1738A(f) provides that a state court may modify another state court's custody determination if it has jurisdiction to make a child custody determination, and the court of the other state no longer has jurisdiction or has declined to exercise that jurisdiction. This is the only instance, under the PKPA, in which more than one state may exercise jurisdiction over a custody dispute. Thompson v. Thompson, 484 U.S. 174, 177 n.2 (1988). We have already determined that the California court no longer has jurisdiction to modify the custody decree under secs. 822.14 and 822.03, Stats., and that the Wisconsin court has jurisdiction to make the child custody determination. Therefore, under the PKPA, the Wisconsin court may modify the California court's custody decree.
We hold that guardianship and TPR proceedings were "custody proceedings" within the meaning of sec. 822.02(3), Stats. Therefore, the UCCJA controls the disposition of this case. Under the UCCJA, the Wisconsin court assumed jurisdiction over the custody of A.E.H. in *323 the guardianship proceeding and properly exercised that jurisdiction in accordance with the provisions of the UCCJA. We hold further that the Wisconsin court had jurisdiction under the UCCJA to "modify" the California custody decree, and this exercise of jurisdiction did not conflict with the PKPA. The matter should be returned to the circuit court to determine the matter of custody.
By the Court.The decision of the court of appeals is reversed and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.
CHIEF JUSTICE HEFFERNAN took no part.
NOTES
[] Motion for reconsideration denied. HEFFERNAN, C.J., did not participate.
[1] Both Wisconsin and California have adopted the Uniform Child Custody Jurisdiction Act. The jurisdiction provision of the UCCJA appears in sec. 822.03(1), Stats. 1987-88, which provides:

822.03 Jurisdiction. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or (c) The child is physically present in this state, and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with par. (a), (b) or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
(2) Except under sub. (1)(c) and (d), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine custody.
[2] Section 822.02(3), Stats. 1987-88, provides:

822.02 Definitions. As used in this chapter: . . . (3) "Custody proceeding" includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings.
[3] The Restatement (Second) of Judgments, section 12 provides:

Section 12. Contesting Subject Matter Jurisdiction. When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.
[4] On September 8, 1986, the Santa Clara Superior Court filed an "Order, Judgment & Decree Regarding Jurisdiction," stating that the release of the child was a "custody determination" within the meaning of 28 U.S.C. sec. 1738A(b)(3), and that the court did not decline its jurisdiction to Wisconsin.
[5] The address at which the sheriff attempted personal service on A.E.H.'s father was the same address that he had given to the military and police authorities on March 14, 1986, when he inquired about the whereabouts of A.E.H. An investigation showed that he had not lived at the given address for at least four years.
[6] Section 822.06(3), Stats. 1987-88 provides:

822.06 Simultaneous proceedings in other states. . . . (3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with ss. 822.19 to 822.22. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.
[7] The father of A.E.H.'s brother has never commenced a paternity action to establish his legal rights to the child, and he has never been adjudged to be the child's father. A.E.H.'s brother has been adopted by P.C. and J.H.
[8] The Parental Kidnapping Prevention Act provides, in part:

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
. . . .
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (11) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
. . ..
(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (cX1) of this section continues to be met and such State remains the residence of the child or of any contestant.
(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if
(1) it has jurisdiction to make such a child custody determination; and
(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.
[9] On a motion by the child's aunt and uncle, this court took judicial notice of certified copies of the summons and complaint, motion to dismiss, and the order issued by the court in the federal proceeding.
[10] They moved the court, pursuant to sec. 767.24(1)(c), Stats. 1987-88, for an order awarding them legal custody of A.E.H., provided they could demonstrate to the court "compelling reasons" to award custody of the child to a non-parent, as that term is used in Barstad v. Frazier, 118 Wis.2d 549, 348 N.W.2d 479 (1984).
[11] Section 822.15(1), Stats. 1987-88 provides:

822.15 Filing and enforcement of custody decree of another state. (1) A certified copy of a custody decree of another state may be filed in the office of the clerk of any circuit court of this state. The clerk shall treat the decree in the same manner as a custody decree of a circuit court of this state. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a circuit court of this state.
[12] The United States Supreme Court alluded to a particularized jurisdictional rule, such as the UCCJA, in Schaffer v. Heitner, 433 U.S. 186, 208 n.30 (1977): "We do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudication of status, are inconsistent with the standard of fairness."
[13] Sections 48.427(2)-(4), Stats. 1987-88 provides:

48.427 Dispositions. . . . (2) The court may dismiss the petition if it finds that the evidence does not warrant the termination of parental rights. (3) The court may enter an order terminating the parental rights of one or both parents. If the rights of both parents or of the only living parent are terminated, the court shall either:
(a) Transfer guardianship and custody of the child pending adoptive placement to:
1. A county department authorized to accept guardianship under s. 48.57(1)(c) or (hm).
. . . .
3. A child welfare agency licensed under s. 48.61(5) to accept guardianship.
4. The department.
5. A relative with whom the child resides, if the relative has filed a petition to adopt the child.
6. An individual who has been appointed guardian of the child by a court of a foreign jurisdiction.
(b) Transfer guardianship of the child to one of the agencies specified under par. (a) 1 to 4 and custody of the child to an individual in whose home the child has resided for at least 12 consecutive months immediately prior to the termination of parental rights or to a relative.
(4) The court may enter an order terminating the parental rights of one or both parents and placing the child in sustaining care under s. 48.428.
[14] Section 822.02(2), Stats., 1987-88 provides:

822.02 Definitions. As used in this chapter: . . . (2) "Custody determination" means a court decision and court orders and instructions providing for legal custody, physical placement or visitation rights.
[15] Section 822.02(4), Stats., 1987-88 provides:

822.02 Definitions. As used in this chapter: ... (4) "Decree" or "custody decree" means a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree.
[16] Section 822.02(5), Stats. 1987-88 provides:

822.02 Definitions. As used in this chapter: . . . (5) "Home state" means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6month or other period.
[17] Section 822.07, Stats. 1987-88 provides:

822.07 Inconvenient forum. (1) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child. Motions under this subsection may be heard on the record as prescribed in s. 807.13.
(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(a) If another state is or recently was the child's home state;
(b) If another state has a closer connection with the child and family or with the child and one or more of the contestants; (c) If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;
(d) If the parties have agreed on another forum which is no less appropriate; and
(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in a. 822.01.
(4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.
(5) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate consent and submission to the jurisdiction of the other forum.
(6) The court may decline to exercise its jurisdiction under this chapter if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.
(7) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the coats of the proceedings in this state, necessary travel and other expenses, including attorneys' fees incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.
(8) Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.
(9) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact.
[18] Section 822.06(4), Stats. 1987-88 provides: . . .

822.06 Simultaneous proceedings in other states. . . . (4) The communication between courts called for by sub. (3) or s. 822.07(4) may be conducted in the record by telephone conference to which the courts and all counsel are parties.
[19] Section 822.14, Stats. 1987-88 provides:

822.14 Modification of custody decree of another state. (1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction. (2) If a court of this state is authorized under sub. (1) and s. 822.08 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with s. 822.22.
[20] Section 822.12, Stats. 1987-88 provides:

822.12 Binding force and res judicata effect of custody decree. A custody decree rendered by a court of this state which had jurisdiction under s. 822.03 binds all parties who have been served in this state or notified in accordance with s. 822.05 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this chapter.
[21] The child's aunt and uncle claim error in that neither Judge Rude, in the petition for legal custody, nor the court of appeals had before it the guardianship record containing Judge Lussow's thirty-three findings of fact in his jurisdictional decree. The court can only review what the parties have put before it. If P.C. and J.H. thought it was crucial to have the guardianship record before Judge Rude, they could have filed all the relevant documents with the court in their petition for legal custody of A.E.H. On appeal, they could have appended the relevant documents to their brief or made a motion to supplement the record. We note that on review to this court, P.C. and J.H. did make a motion to order transmittal of the guardianship record. This court granted the motion, and now has before it the prior jurisdiction determinations.
[22] Restatement, supra note 3.
[23] Section 822.08, Stats. 1987-88 provides:

822.08 Jurisdiction declined by reason of conduct. (1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
(2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.
(3) In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses.
[24] This examination does not, however, void or affect the prior California custody decree.