Dr. Juanita L. CLAY, Elizabeth Dobynes, Vickie Gamboa, Archie Lunsey, Willie Mae Warren, on behalf of themselves and all others similarly situated, Landon Gamboa by his mother and next friend Vickie Gamboa; Lauren Hayden by his mother and next friend Willie Mae Warren, and all African–American students in the Fort Wayne Community Schools, and all other persons similarly situated, Plaintiffs–Appellants,

v.

FORT WAYNE COMMUNITY SCHOOLS; Board of Trustees for Fort Wayne Community Schools; and Members of the Board of School Trustees: Carl L. Johnson, Leslye E. Mohrman, Benjamin A. Eisbart, Carol J. Coen, Stephen Corona, Joseph S. McComb and Jeanette S. Quilhot, Defendants–Appellees.

No. 95–1857.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1996.

Decided Feb. 16, 1996.

Jack C. Brown, Indianapolis, IN, John O. Moss, argued, Moss & Associates, Indianapolis, IN, for Plaintiffs–Appellants.

William Sweet, argued, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, IN, for Defendants–Appellees.

Before COFFEY, ESCHBACH, and EVANS, Circuit Judges.

ESCHBACH, Circuit Judge.

Five adult residents of Fort Wayne, Indiana, brought the instant class action pursuant to 42 U.S.C. § 1983, alleging that the Board of Trustees of the Fort Wayne Community School System discriminated against African–Americans in the Board's search to hire a superintendent of schools. The plaintiffs amended their complaint to include as named plaintiffs students in the Fort Wayne Community School System (collectively "the student plaintiffs"). The student plaintiffs were included as representatives of a student class of plaintiffs. The defendants filed motions to dismiss both the original and the amended complaints, arguing that both the adult and the student plaintiffs lacked standing to bring a claim. Fed.R.Civ.P. 12(b)(1). The district court granted the defendants' motions. Both groups of plaintiffs appeal. We AFFIRM.

## I.

The position of superintendent of schools for the Fort Wayne Community School System was vacated sometime prior to April of

1994.[1] In April, the Board of Trustees for the Fort Wayne Community Schools commenced a search for a new superintendent. The search produced two candidates, both of whom are Caucasian. Dr. Juanita L. Clay, Elizabeth Dobynes, Vickie Gamboa, Archie Lunsey and Willie Mae Warren, all of whom are African–American residents of Fort Wayne, viewed the Board's efforts to hire a new superintendent as racially discriminatory. In an effort to halt the Board's alleged discriminatory practices and prevent the Board from selecting one of the two candidates, the five plaintiffs (collectively "the adult plaintiffs") brought suit pursuant to 42 U.S.C. § 1983 alleging that the Board's conduct: violated their rights to equal protection, due process, and equal representation; constituted an unconstitutional delegation of authority; and abridged their right to vote [2]

In support of their legal claims, the adult plaintiffs offered the following, largely conclusory, allegations. According to the adult plaintiffs, the Board: refused to consider African–American applicants for the superintendent position; deliberately "conducted the business of said school system in a way to discourage and undermine the candidacy for said position of African–American persons"; "violated the confidence of an African–American person who manifested interest in the vacant ... position"; ignored the "candidacies" of African–American educators Eugene White, James Easton, and Percy Clark even though they were more qualified for the position than Caucasian applicants;[3] and "never instructed a Search Committee not to consider the candidacy of Caucasian persons" for the superintendent position.

In addition to being residents and taxpayers, plaintiffs Gamboa and Warren are parents of children in the Fort Wayne schools; however, they brought their claims personally—not as representatives of their children. Lunsey is president of the Fort Wayne City Council; however, he also joined the suit personally, "[i]n furtherance of his obligation to represent his constituents, and as a parent whose children have attended" the Fort Wayne schools. (Appellants' Brief at 2). The adult plaintiffs brought their claims as a class action, seeking to represent all others similarly situated. Notably, none of the named plaintiffs applied for the superintendent position.

The defendants (collectively "the Board") filed a motion to dismiss the suit pursuant to Federal Rule 12(b)(1), arguing that the adult plaintiffs lacked standing. The adult plaintiffs responded by petitioning the court for leave to amend their complaint, and submitting a First Amended Verified Complaint. In addition to setting forth the same claims outlined in the original complaint, the amended complaint included as plaintiffs Landon Gamboa, as represented by his mother Vickie Gamboa, and Lauren Hayden, as represented by his mother Willie Mae Hayden. Landon Gamboa and Lauren Hayden are students in the Fort Wayne Community School System. The student plaintiffs brought their claims as representatives of a student class of plaintiffs consisting of all African–American students in the Fort Wayne School System. The amended complaint alleged that the Board's discrimination violated the students' constitutional rights and harmed the children by making them feel "demotivated" and "discouraged." The complaint also charged that the Board "do[es] not and ha[s] not engaged in a pattern and practice" of conduct designed to be "demotivating and discouraging" to white pupils. All plaintiffs sought declaratory and injunctive relief. The Board moved to dismiss the amended complaint.

Approximately three months after receiving the amended complaint, the district court granted the adult plaintiffs' motion for leave to amend. The court simultaneously granted the Board's motions to dismiss both the original and the amended complaints. The plaintiffs filed a notice of appeal that named only the adult plaintiffs. The notice of appeal made no mention either of the student plain-

---

1. The record does not indicate the precise date that the position was vacated.

2. After the plaintiffs commenced this action, the Board selected Dr. Thomas Fowler Finn to serve as its new superintendent. Dr. Finn is not an African–American.

3. It is unclear whether any of the three actually applied for the superintendent position.

tiffs, or of any adult serving as a representative of the student plaintiffs.

## II.

■ As a preliminary matter, we must consider whether we have jurisdiction to hear the appeals of all plaintiffs named in the amended complaint. The Appellants' briefs raise arguments on behalf of both the adult and the student plaintiffs. However, the notice of appeal made no reference to the student plaintiffs. The Board argues that the failure to include the student plaintiffs in the notice of appeal deprives us of jurisdiction to consider the merits of the students' arguments. We agree.

We begin our analysis with the plain language of the Federal Rules. Federal Rule of Appellate Procedure 3(c) provides, in part:

> In a class action, whether or not the class has been certified, it is sufficient for the notice [of appeal] to name one person qualified to bring the appeal as representative of the class. . . . An appeal will not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.

The language of the Federal Rule provides that, in the context of a class action, the notice of appeal must include at a bare minimum the name of one person qualified to bring the appeal on behalf of the class.

Although the district court never reached the issue of class certification, there can be little doubt that the plaintiff class consists of at least two discernable groups: the adult plaintiffs and the student plaintiffs. The two named student plaintiffs were added via an amended complaint as representatives of a distinct class of student plaintiffs. Indeed, the complaint alleges that the Board's conduct harmed each group in rather distinct ways. The adult plaintiffs assert, among other things, that they have been deprived of their voting rights. While the student plaintiffs contend that the alleged discrimination by the Board has demotivated and discouraged them as students. Yet the notice of appeal made no mention of the student plain-

tiffs, the student class, or any injuries or harms unique to them.

The plaintiffs contend that the student plaintiffs were necessarily included in the notice of appeal for two reasons: the adult plaintiffs who are parents of the student plaintiffs were named in the notice of appeal and the notice of appeal stated that it applied to the district court's "Final Judgment and Order" and "all other Judgments adverse to the Plaintiffs." As to the first point, it is somewhat disingenuous for the adult plaintiffs to now feign ignorance as to the importance of naming the parents as representatives of their children, as opposed to naming the parents in their individual capacities. The plaintiffs are well aware that naming the adults in their individual capacities is insufficient to include the adults' minor children. The adult plaintiffs amended their complaint specifically to include the student class. Why? Because they knew that the parent plaintiffs, in their individual capacities, were not representatives of the student plaintiffs. The reason that the adult parents do not represent the student plaintiffs is simple; the students represent different classes of litigants with different claims from those of the adults. Therefore, the adult plaintiffs in their individual capacities are not qualified to bring an appeal on behalf of the student class. Notice by the adult plaintiffs is simply not the functional equivalent of notice by the student plaintiffs. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988) (holding that a court may find that a litigant has complied with Federal Rule of Appellate Procedure 3 if the litigants' action is the functional equivalent of what the Rule requires); *cf. Murphy v. Keystone Steel and Wire Co.*, 61 F.3d 560, 570–71 (7th Cir.1995) (holding that, in the context of a class action, including in the notice of appeal the name of a class member without reference to the class is insufficient in some cases to preserve the claims of the class on appeal).

As to the plaintiffs' argument that the notice of appeal applied to all adverse judgments entered by the court, the plaintiffs are correct. However, the notice of appeal applied only to all adverse judgments entered

against those plaintiffs, or their representatives, named in the notice of appeal. Neither the student plaintiffs, nor their parents as representatives, were named in the notice of appeal. Therefore, the only plausible objective reading of the notice of appeal is that the adult plaintiffs are appealing all adverse judgments entered against them, not judgments entered against their children or the student plaintiffs. Certainly an intent to include the student plaintiffs is not "otherwise clear" from the notice.

Class-action litigation is very burdensome. Most, if not all, defendants lack clairvoyant ability. Therefore, they must rely on notices of appeal to inform them of which parties are appealing which claims. Were we to adopt the position urged by the plaintiffs, class-action defendants in actions brought by multiple classes would never know which classes were appealing the court's decision. Notice of appeal by one class would serve as notice of appeal for all classes. We decline to place defendants in such an untenable position.

■ The plaintiffs would also have us rely on their briefs submitted to this court. The Appellants' briefs clearly argue the merits of the student plaintiffs' appeal. However, the briefs were filed more than 30 days after the district court entered judgment against the plaintiffs. Federal Rule of Appellate Procedure 4 requires that a notice of appeal must be filed within 30 days of the district court entering judgment. We may not treat briefs as incorporating a notice of appeal where the briefs are filed after the proscribed time for lodging a notice of appeal. *See Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 681, 116 L.Ed.2d 678 (1992) (holding that a brief may serve as notice of appeal only when otherwise complies with the requirements of the Federal Rules).

■ The requirements of Rule 3 are jurisdictional. *Murphy*, 61 F.3d at 570. Sat-

isfaction of those requirements are a prerequisite to appellate review. Neither plaintiff Landon Gamboa nor plaintiff Lauren Hayden satisfied those requirements. Therefore, we hold that we lack jurisdiction to consider the claims of the student plaintiffs.[4] In what follows, the adult plaintiffs will be designated as Appellants.

## III.

■ Turning to the merits of the Appellants' appeal, we must decide whether the district court properly held that the Appellants lack standing to bring the instant suit. Reviewing the district court's decision *de novo* and accepting all of Appellants' pleaded facts as true, *Doe v. County of Montgomery, Ill.*, 41 F.3d 1156, 1158 (7th Cir.1994), we conclude that the Appellants lack standing both under Article III and the prudential doctrines of this court.

The Supreme Court outlined the three-part "irreducible constitutional minimum of standing" in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). In *Lujan*, the Court held:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant...." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61, 112 S.Ct. at 2136 (citations omitted).

---

4. The failure to include the student plaintiffs in the notice of appeal is not catastrophic. The students surely would lose were we to reach the merits of their claims. The students contend that the alleged discrimination left them feeling "demotivated" and "discouraged." The students offer us nothing more than these conclusory assertions. The students do not allege that the Board's conduct deprived them of the ability to receive an equal education. At best, the students allege amorphous psychological injuries insufficient to confer standing. *See Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir.1988) (holding that psychological harm that results from witnessing conduct with which one disagrees is not sufficient to confer standing).

We have grave reservations about whether the Appellants' claims satisfy prongs two and three of the *Lujan* analysis. It is difficult for us to garner any causal link between the conduct of the Board and harm to the Appellants. What is more, it is not clear to us that equitable relief would remedy any specific harm. Appellants seek a court order "restraining Defendants from continuing or maintaining any practice, policy, custom and usage of withholding or denying or attempting to withhold or deny, or depriving, or attempting to deprive, or otherwise interfering with the rights of Plaintiffs, and others similarly situated, to the full use and enjoyment of their rights as African–American Citizens of the City of Fort Wayne...." ("First Amended Verified Complaint" at 2). Appellants come to the court with a very broad request.

■ However, we need not decide these questions, because the Appellants clearly fail the first prong of the *Lujan* analysis; Appellants' alleged harm is not a legally protected interest sufficiently particularized to the Appellants. Appellants' inability to establish standing rests squarely on one false proposition alleged by Appellants: the plaintiffs "have a Constitutional right to have a Black person considered for the Office of Superintendent of Fort Wayne Public Schools." (First Amended Verified Complaint at 4). The Appellants have no such right. No doubt Appellants, as well as the rest of society, have a strong interest in thwarting discrimination. But there is a difference between a political or social interest and a constitutional right. Appellants have no constitutional right that we are aware of to have another African–American considered for the position of superintendent. To the extent that Appellants' claims depend upon the existence of such a right, they fail to allege a legally protected interest. *Cf. Allen v. Wright*, 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984) (holding that an asserted right to have government conduct conform with the law is insufficient to confer federal jurisdiction).

■ That is not to say that the allegations raised in the instant complaint do not give rise to constitutional claims. On the contrary, if the Board acted as the Appellants allege, then the Board violated the Constitution. In that sense, the Appellants raise constitutional "claims." However, the Board would have violated the constitutional rights of African–American applicants for the superintendent position. The African–American applicants are the ones being denied a position on the basis of race. By bringing suit, the Appellants effectively are attempting to bring a claim to redress harms allegedly committed against the African–American applicants. In the context of this litigation, the applicants are third parties. It is well settled that a plaintiff usually must assert his own legal interests and not the legal interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Third-party representation is a prudential consideration, requiring us to consider "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* at 500, 95 S.Ct. at 2205. As we noted in *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239 (7th Cir.1991), "not everyone injured by the violation of a statute will be permitted to address the violation.... An important purpose of the rules of standing is to identify the best placed plaintiff and give him a clear shot at suit...." *Id.* at 1242. Clearly the African–American applicants are the plaintiffs best suited to bring claims regarding infringements on their own constitutional rights.[5]

■ Even assuming arguendo that the Appellants invoke constitutional principles that confer upon them a legally protected interest on the facts of this case, the Appellants' claims are generalized grievances

---

**5.** Exceptions to the third-party standing rule are permitted where it would be difficult if not impossible for the harmed individual to present his claims before the court. *Rios v. United States*, 364 U.S. 253, 255–56, 80 S.Ct. 1431, 1433, 4 L.Ed.2d 1688 (1960). In such cases, courts have permitted plaintiffs to advance claims on behalf of incapacitated third parties. Because no evidence suggests that the African–American applicants are incapacitated, we see no need to consider such an exception here.

shared in substantially equal measure by a large class of citizens. Despite their due process, equal protection, equal representation, and voting rights claims, the Appellants fail to allege so much as a scintilla of evidence that the harms suffered by them are distinct from the harms suffered by the citizenry of Fort Wayne. The Appellants claim that the Constitution has been violated. But they fail to identify any injury suffered by them as a result of the constitutional error. Nothing in either the complaint or the briefs suggests that the Appellants altered their behavior in any way as a result of the discrimination. In fact, nothing suggests that the Appellants suffered anything other than indignation: personal offense from the knowledge that unconstitutional conduct is occurring. Indignation is not an injury-in-fact sufficient to confer standing. *Harris v. City of Zion, Lake County, Ill.*, 927 F.2d 1401, 1405 (7th Cir.1991), *cert. denied*, 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 897 (1992); *American Civil Liberties Union v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986). Therefore, to the extent that the Appellants allege violations of their own constitutional rights, the alleged injuries are not sufficiently "concrete and particularized" to confer standing. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982) (holding that the exercise of judicial power is limited to those litigants who can show injury in fact).

Finally, we must consider whether the Appellants' status as "taxpayers" gives them standing to bring suit. In *Doremus v. Bd. of Education*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), the Supreme Court held that municipal taxpayers have standing to bring claims against municipalities only when they bring "a good-faith pocketbook action." *Id.* at 434, 72 S.Ct. at 397. In other words, municipal taxpayers have standing when they object to a disbursement of funds occasioned solely by the alleged unconstitutional conduct. Municipal taxpayer status does not confer standing absent some allegation by

the plaintiffs of an illegal use of tax revenues. *American Civil Liberties Union v. City of St. Charles*, 794 F.2d 265, 267 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986). The Appellants, although they repeatedly assert that they are taxpayers, have failed to raise any specific challenge to an unlawful expenditure of municipal funds. Therefore, they lack standing as municipal taxpayers.[6]

### Conclusion.

We conclude that we lack jurisdiction to review the student plaintiffs' claims. The district court's judgment dismissing the adult plaintiffs' claims for lack of standing is

AFFIRMED.

---

6. We express no opinion on whether the Appellants would have standing as municipal taxpay- ers had they properly challenged an illegal expenditure of funds.