**T.W. and M.W., minors, by their next friend, Scott ENK, Plaintiffs–Appellants,**

**v.**

**Thomas BROPHY, et al., Defendants–Appellees.**

**Nos. 96–3512, 96–4136.**

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1997.

Decided Sept. 11, 1997.

Kathleen Mitchell (argued), Louisville, KY, for Plaintiffs–Appellants.

John F. Jorgensen, Office of the Corporation Counsel, Milwaukee, WI, for Thomas Brophy.

Timothy W. Feeley, Stephen W. Hayes, Von Briesen, Purtell & Roper, Milwaukee, WI, for Catholic Social Services of the Archdiocese of Milwaukee Incorporated.

Richard A. Victor, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Mel Flanagan.

Harold Laufer (argued), Maria K. Myers, Louis F. Raymond, Susan G. Schellinger, Davis & Kuelthau, Milwaukee, WI, for Legal Aid Society of Milwaukee, Incorporated.

Peter D. Alberg, Wayne Van Ert, Otjen, Vanert, Stangle, Lieb & Weir, Milwaukee, WI, for Children's Hospital of Wisconsin, Incorporated.

Harvey J. Goldstein (argued), Milwaukee, WI, for Institute for Child and Family Development.

Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

In this suit—a flamboyant abuse of the process of the federal courts—two small children are purported to be seeking damages of $120 million against 24 defendants that constitute a cross-section of the officials and institutions concerned with the provision of social services to children in Milwaukee.

The children, who are black, are said to claim that the defendants in violation of the equal protection clause of the Fourteenth Amendment conspired to remove them for racist reasons from their white foster parents and place them with an aunt (black) who has abused the children sexually. The custody battle between the foster parents and the aunt has been litigated throughout the Wisconsin court system and the aunt has won.

 To maintain a suit in a federal court, a child or mental incompetent must be represented by a competent adult. *Gardner by Gardner v. Parson*, 874 F.2d 131, 137 n. 10 (3d Cir.1989); 4 *Moore's Federal Practice* § 17.20[1], p. 17–87 (3d ed.1997). A child who does not have a guardian or other "duly appointed representative may sue by a next friend or by a guardian ad litem" appointed by the district court. Fed.R.Civ.P. 17(c). The terms are essentially interchangeable, but "next friend" is normally used when the child is the plaintiff, and "guardian ad litem" when the child is the defendant. (Just to add to the confusion, when the child does have a general representative, the representative will usually be designated as the child's "next friend," despite the wording of Rule 17(c) quoted above.) The court does not usually appoint a next friend; it is usually the next friend who has taken the initiative in suing on the child's behalf; but appointed or not, he can be challenged as not being a suitable representative, just as a guardian ad litem can be. *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir.1989); *Hull by Hull v. United States*, 53 F.3d 1125, 1127 n. 1 (10th Cir.1995). When someone hauls a child into court as a defendant, the court has to appoint a representative for the child, because of the child's legal incapacity to litigate, and that is the guardian ad litem. Occasionally, for the "friendless" child who might have a legal claim, or if the next friend has a conflict of interest, the court will appoint a next friend or guardian ad litem to represent the child plaintiff in the litigation. *In re Chicago, Rock Island & Pacific R.R.*, 788 F.2d 1280, 1282 (7th Cir.1986); *Ad Hoc Committee of Concerned Teachers v. Greenburgh # 11 Union Free School District*, 873 F.2d 25, 30–31 (2d Cir.1989). The two children who are named as the plaintiffs in this case have a guardian ad litem but not for this suit—in which, in fact, he is named as one of the defendants.

 Rule 17(c) distinguishes between a guardian or other "duly appointed representative," on the one hand—in short, a *general* representative—and a guardian ad litem or a next friend, on the other hand—a special representative. If the general representative has a conflict of interest (for example because he is named as the defendant in the child's suit), or fails without reason to sue or defend (as the case may be), the child may with the court's permission sue by another next friend, or the court may appoint a guardian ad litem for the child. *In re Chicago, Rock Island & Pacific R.R., supra*, 788 F.2d at 1282; *Ad Hoc Committee of Concerned Teachers v. Greenburgh # 11 Union Free School District, supra*, 873 F.2d at 29–30; *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 883 F.2d 25 (5th Cir.1989); *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986 (5th Cir.1984); *Roberts v. Ohio Casualty Ins. Co.*, 256 F.2d 35, 39 (5th Cir.1958); 4 *Moore's Federal Practice, supra*, § 17.21[3][a], pp. 17–94 to 17–95. Yet even if the child's existing representative is in fact inadequate, another next friend can't jump into the case without first obtaining a court order disqualifying the existing representative from representing the child in the suit. *Garrick v. Weaver, supra*, 888 F.2d at 692–93; *Susan R.M. by Charles L.M. v. Northeast Independent School District*, 818 F.2d 455, 458 (5th Cir.1987).

 Unless—and here we come to the heart of the dispute in this case—the court finds the child's general representative to be inadequate, it should not allow the general representative to be bypassed by appointing a special representative to litigate on behalf of his ward. Rule 17(c) doesn't say this in so many words, but it is implicit in the usual formulations of the court's powers under the rule, see *Ad Hoc Committee of Concerned Teachers v. Greenburgh # 11 Union Free School District, supra*, 873 F.2d at 29–30; *Adelman ex rel. Adelman v. Graves, supra; Developmental Disabilities Advocacy Center, Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir.

1982), and was made explicit in *Hoffert v. General Motors Corp.*, 656 F.2d 161, 164 (5th Cir.1981). "As a general rule, a federal court cannot appoint a guardian ad litem in an action in which the infant or incompetent already is represented by someone who is considered appropriate under the law of the forum state." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1570, p. 497 (2d ed.1990). It is a sensible general rule because the management of the affairs of infants, like other matters relating to domestic relations, is the primary responsibility of the states rather than of the federal government.

So far as appears, however, the child plaintiffs in the suit before us do not have a general representative, so there is no obstacle to their being represented in this suit by a special one. They have a custodian, the aunt, who would be the natural choice to be the children's general representative; and we shall see that the fact that she is named as a defendant in the suit would not necessarily allow her to be bypassed. But the defendants do not argue that either she or anyone else is the general representative of the children. The children's guardian ad litem, as we mentioned, was appointed to represent them in a different suit. Naturally the defendants do not point to the former foster parents as appropriate next friends.

One might have expected them to play this role. Instead a lawyer who had got wind of the dispute over the children's custody made contact with a man named Scott Enk, a self-described, and so far as relates to this case self-appointed, children's advocate, and the lawyer asked the district court to allow Enk to represent the children in this suit as their "next friend." One might have thought the lawyer would nominate herself as the next friend—it is common for a child's lawyer to be named (to name himself, really) as the child's next friend, and the practice was endorsed in *Noe v. True*, 507 F.2d 9, 12 (6th Cir.1974) (per curiam), though questioned in *Gardner by Gardner v. Parson, supra*, 874 F.2d at 140 n. 14, on the ground that "a lawyer who acts in both capacities may sometimes fail to distinguish between the two roles." We don't have to take sides in that debate. Evidently the lawyer named Enk rather than herself as the children's next friend because she had never met them and he has, though he does not know them well.

Ordinarily a next friend is a parent or other relative of the child plaintiff. Enk is not a relative of these children. He is a professional children's advocate who, having interested himself in the custody battle at the behest of the lawyer appearing for the plaintiffs in this suit and having been persuaded or persuaded himself that they are being ill-used by their aunt, by their guardian ad litem, and by the entire Wisconsin child-welfare establishment and judiciary, seeks to represent them so that they can bring this suit. The judge held that Enk is not a proper next friend of these children, and dismissed the suit with prejudice.

■ Since the constitutional rights of these children may have been infringed by the conduct of the defendants, the suit satisfies the standing requirement in Article III of the Constitution. The question who shall represent the children because of their incapacity to sue on their own is not a separate issue of standing. Even allowing a complete stranger to bring suit in their name as their next friend because they cannot sue on their own behalf would not violate Article III. But it might well offend the policy behind the requirement of standing, which is to confine the right to initiate and control federal court litigation to persons who have a concrete stake, rather than merely an ideological interest—passionate and motivating as such interests can be—in the litigation. *Whitmore v. Arkansas*, 495 U.S. 149, 164, 110 S.Ct. 1717, 1727, 109 L.Ed.2d 135 (1990); *Illinois Department of Transportation v. Hinson*, 122 F.3d 370, 373 (7th Cir.1997). Without such a limitation, not only would the federal courts be flooded by "cause" suits (*really* flooded), but people who did have concrete stakes in a litigation would often be thrust aside by the ideologues. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982); *Illinois Department of Transportation v. Hinson, supra*, at 373; *Clay v. Fort Wayne Community Schools*, 76 F.3d 873, 878

(7th Cir.1996); *People Organized for Welfare & Employment Rights v. Thompson,* 727 F.2d 167, 173 (7th Cir.1984); *Ad Hoc Committee of Concerned Teachers v. Greenburgh # 11 Union Free School District, supra,* 873 F.2d at 31. It follows, as the Court suggested in the *Whitmore* case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend–that he "must have some significant relationship with the real party in interest." 495 U.S. at 164, 110 S.Ct. at 1727. The Court, however, did not spell out the relationship; nor have subsequent appellate decisions.

Bearing in mind the considerations that we have discussed, and the almost complete lack of authority on the question, we think the proper rule is that the next friend must be an appropriate alter ego for a plaintiff who is not able to litigate in his own right; that ordinarily the eligibles will be confined to the plaintiff's parents, older siblings (if there are no parents), or a conservator or other guardian, akin to a trustee; that persons having only an ideological stake in the child's case are never eligible; but that if a close relative is unavailable and the child has no conflict-free general representative the court may appoint a personal friend of the plaintiff or his family, a professional who has worked with the child, or, in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation. See *In re Cockrum,* 867 F.Supp. 494 (E.D.Tex.1994); *Davis v. Austin,* 492 F.Supp. 273, 275 (N.D.Ga. 1980) (cited with approval in the *Whitmore* case, 495 U.S. at 164, 110 S.Ct. at 1727). Without such a rule, and specifically its exclusion of purely ideological "friends," we may find Mr. Enk popping up in children's suits all over the circuit, perhaps all over the country.

By naming the aunt and the guardian ad litem appointed by the Wisconsin courts as defendants, Enk has attempted to disqualify from representing these children the most natural candidates to represent them in litigation (except for the former foster parents, whose absence from the litigation puzzles us). To entitle a stranger to bring suit on behalf of children or other legal incompetents on the basis of blunderbuss allegations in a complaint is too facile a circumvention of the ordinary limitations on standing. There is, as we have said, no absolute prohibition against the district judge's permitting a stranger, like Enk, to serve as the children's next friend, or to appoint Enk their guardian ad litem; but the presumption is against, and a strong case for an exception must be made—bare allegations in a complaint won't do. Domestic relations in general, and child custody in particular, are, as we also said earlier, the primary responsibility of the states. The Supreme Court has told the lower federal courts to go easy in interfering with the states' exercise of that responsibility. *Ankenbrandt v. Richards,* 504 U.S. 689, 704, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992); *Ex parte Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 852, 34 L.Ed. 500 (1890); *Amerson v. Iowa,* 94 F.3d 510, 513 (8th Cir. 1996). Enk and his lawyer appear to be trying to remove a Wisconsin domestic relations case to the federal courts, using the children as pawns in these adults' struggle with the policies of the Wisconsin courts in custody matters—trying, in short, to make an end run around the state's domestic relations jurisdiction.

The best way to prevent this, it occurs to us, would be to require the would-be next friend who is not the child plaintiff's general representative to seek appointment in state court as a guardian ad litem in the federal suit. We do not know whether a Wisconsin court would appoint a guardian ad litem when the *lis* was in another judicial system. If not, the federal district court would be free to do so. If the state court has the power under state law to appoint a guardian ad litem in a federal suit but decides not to do so because it is satisfied that the children are being adequately represented by their aunt or by the existing guardian ad litem, that judgment would bind the federal district court as a matter of res judicata. 28 U.S.C. § 1738; *Pliska v. City of Stevens Point,* 823 F.2d 1168, 1172 (7th Cir.1987); *In the Interest of A.E.H.,* 161 Wis.2d 277, 468 N.W.2d 190, 205–06 (1991). Our point is only that Enk and his lawyer should endeavor to bring the issue of representation to the attention of

the state courts, cf. *In the Interest of Steveon R.A.*, 196 Wis.2d 171, 537 N.W.2d 142 (1995), in order to head off a situation in which, by virtue of the federal court's exercise of an independent jurisdiction, the children are represented by two antagonistic adults, one in the state courts and one in the federal courts—the aim sought by Enk.

■ Were there no other obstacle to the suit, we might think that Enk should be given a chance to seek appointment in the state courts to act as the children's representative before the suit is dismissed on the ground of the plaintiffs' lack of capacity to sue, and the case in the district court meanwhile stayed rather than dismissed. But as it happens there is an independent ground on which the suit must be dismissed—the *Rooker–Feldman* doctrine, which confines jurisdiction to review judgments of state courts to the U.S. Supreme Court. See, e.g., *GASH Associates v. Village of Rosemont*, 995 F.2d 726 (7th Cir.1993); *Liedel v. Juvenile Court*, 891 F.2d 1542, 1545–46 (11th Cir.1990). The present suit attacks, not in the U.S. Supreme Court but in a federal district court, the judgment of the Wisconsin state courts awarding custody of the children to the aunt. It is therefore barred.

But when a suit is dismissed for want of subject-matter jurisdiction, that is, because the court has no power to resolve the case on the merits even if the parties are content to have it do so, it is error to make the dismissal with prejudice. *Costello v. United States*, 365 U.S. 265, 285, 81 S.Ct. 534, 544, 5 L.Ed.2d 551 (1961); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1277 (7th Cir.1983); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n. 4 (2d Cir.1994). For that would bar, by operation of the doctrine of res judicata, the relitigation of the suit on the merits even though the district court, by definition of not having subject-matter jurisdiction, could not resolve the merits. This suit can be refiled in state court, therefore, assuming jurisdiction can be obtained there. Not to raise false hopes, we add that in any refiled suit the defendants will have powerful defenses of official immunity and (based on the judgment in the earlier Wisconsin litigation, though, as we have just explained, not by virtue of the judgment of the district court) res judicata.

We are mindful of the argument, which has support in *Gardner by Gardner v. Parson*, supra, 874 F.2d at 140–41, and *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, supra, 883 F.2d at 27, that a court should not enter a dispositive order in a case in which the party that would be harmed by the order is legally incapacitated and does not have a representative. But this is a principle of prudence (clearly so regarded by the Fifth Circuit in *Chrissy*, see 883 F.2d at 27; see also *Roberts v. Ohio Casualty Ins. Co.*, supra, 256 F.2d at 39, less clearly by the Third Circuit in *Gardner*) rather than a rigid rule. If the party that lacks capacity to litigate is the defendant, the court obviously should hesitate before entering a judgment on the merits when it has just decided that the defendant has no proper representative in court. At the other extreme, which this case illustrates, if the person without capacity to sue is a plaintiff whose interest in the suit is being vigorously championed by a lawyer who is free from any conflict of interest, *Ruppert v. Secretary of the U.S. Dep't of Health & Human Services*, 671 F.Supp. 151, 172 (E.D.N.Y.1987); *Moe v. Dinkins*, 533 F.Supp. 623, 627 (S.D.N.Y.1981)—unlike the lawyer in *Gardner*, see 874 F.2d at 140 n. 14—and the suit is patently outside the jurisdiction of the district court, we cannot find a benefit in postponing the inevitable to await the finding of a proper next friend or guardian ad litem. In *Chrissy*, the court refused to decide whether it had jurisdiction over the case until it could be determined whether the plaintiff was represented by a proper next friend. Four years later the court dismissed the case on the jurisdictional ground that had been before it four years earlier—a ground similar to the one in this case. 995 F.2d 595 (5th Cir.1993). No purpose would be served by delaying the same inevitability here.

■ The plaintiffs ask us to reverse the district court's award of court costs to the defendants. As no objection was made to the award in that court, the issue is waived. *Richardson v. Communications Workers of America*, 530 F.2d 126, 133 n. 10 (8th Cir. 1976).

The judgment is modified to make the dismissal of the suit without prejudice, and as modified is affirmed.