Peter L. v. Rollins, et al.          CV-00-129-M    12/19/01
                        UNITED STATES DISTRICT COURT

                          DISTRICT OF NEW HAMPSHIRE


Peter L.; Peter L. as
Parent and Next Friend of
Ashley W.; and Peter L. as
Next Friend of Christopher W.,
     Plaintiff

     v.                                    Civil No. 00-129-M
                                           Opinion No. 2001 DNH 224
Nancy Rollins; Nancy Dubois;
Russann Niles; Lynn Stanley;
Gailann Newton; Dan Newton;
and the Division for Children,
Youth, and Families,
     Defendants


                         **O R D E R**


     Peter L., acting in various capacities and relying upon

various legal theories, has sued for equitable relief and

monetary damages on behalf of himself, his daughter, Ashley W.,

and her half-brother, Christopher W. ("the children").  The

children have been in the custody of the New Hampshire Division

for Children, Youth, and Families ("DCYF") throughout this

litigation.  By order dated April 26, 2001, the court dismissed:

(1) all of plaintiff's claims related to placement or custody of

the children; and (2) all claims against Lynn Stanley, Gailann

Newton, and Dan Newton.  The remaining claims (paragraphs 19, 20,

and 41 of the complaint) are asserted by plaintiff, on behalf the children, against Nancy Rollins, Nancy Dubois, Russann Niles, and DCYF, for abuse the children allegedly suffered while in DCYF custody. Defendants recently filed a motion seeking to remove Peter L. as "next friend" of Ashley and Christopher. Plaintiff objects. For the reasons given below, defendants' motion is granted.

### Factual Background

The basic facts of this case have been set out in orders dated January 12 and April 26, 2001. They are repeated and supplemented here only to the extent relevant in deciding the matter before the court.

Both Ashley and Christopher "were removed from the custody of their mother, Lesley W on April 19, 1993 as a result of an allegation of neglect." (Mot. to Remove Peter L. as "Next Friend", Ex. A (Niles Aff.) ¶ 4.) "The Manchester district court granted temporary custody of the children to DCYF on April 21, 1993. An adjudicatory hearing was held on July 28, 1993 at which time a finding of neglect was made." (Id. ¶ 5.) The district

court awarded legal custody of the children to DCYF, and they have remained in the custody of DCYF ever since. Plaintiff challenged the legality of the Manchester District Court's award of custody to DCYF, on grounds that he never received proper notice that custody was to be adjudicated. But, in a memorandum decision dated October 15, 2001, his petition for a writ of certiorari to the Supreme Court of New Hampshire was denied by the United States Supreme Court. Peter L. v. Rollins, 122 S. Ct. 399 (2001).[1]

On February 14, 2001, acting on petitions filed by both DCYF and plaintiff, the Hillsborough County Probate Court issued an order that: (1) terminated plaintiff's parental rights over Ashley; (2) denied plaintiff's request for guardianship over Christopher; (3) directed Patricia Quigley, Esq., to continue serving as the children's guardian ad litem; and (4) directed

---

[1] According to plaintiff, his petition to the United States Supreme Court requested review of both the 1993 award of custody to DCYF by the Manchester District Court and the Hillsborough County Probate Court's February 14, 2001, decision (discussed infra) to terminate his parental rights over Ashley and to deny his petition for guardianship over Christopher. (Obj. to Mot to Remove Peter L. as "Next Friend" ¶ 10.)

DCYF to refer the children to the Division's Adoption Unit. (Mot. to Remove Peter L. as "Next Friend", Ex. B. at 18-20.)

In a twenty-page order, issued after a hearing that extended over several days (id. at 2), the probate court terminated plaintiff's parental rights to Ashley because: (1) despite having more than six years to do so, plaintiff failed to correct the conditions that led the district court to enter its finding of abuse and neglect; and (2) plaintiff failed to provide support for his daughter for more than six years. (Id. at 5.) In support of its decision, the probate court made the following findings of fact:

> He [plaintiff] failed to obtain adequate housing [as required by DCYF]. He failed to cooperate with the social worker. He failed to prevent the children from meeting with Leslie [W., the children's biological mother], introduced her name to the children and acted as an agent to transfer gifts between her and the children [in direct violation of DCYF directives]. That he failed to follow the recommendation of the children's psychologist. What is contrary to his stated position is the fact that although he was found to be the biological father of Ashley in 1995, he still has not had his name inserted on her birth certificate.

(Id. at 15.) The probate court also found that:

. . . Mr. [L.] was told specifically what he had to do to correct the conditions which had led to a finding of neglect. . . . He was told that Leslie [W.], the biological mother, had caused the condition, and that the children were not to be placed in contact with her or to allow her to contact the children, which he failed to do. Furthermore, it is undisputed that after more than 6 years, he is still living in a rooming house.

At the hearings, he did not provide any plan which would provide Ashley with supervision while he was at work. No plan was prepared as to school, medical needs and counselling [sic] for the child. Instead, 6 years was spent in arguing whether or not Leslie [W.], a self-admitted confirmed alcoholic, was a fit mother, and whether she should be allowed to be in contact with the children.

Peter [L.] never disputed that the mother was an alcoholic. That she absented herself for weeks, and her whereabouts were unknown. Yet he refused to believe that the children were in a neglectful environment or that her actions were harmful to the children.

Also, it is undisputed that he has failed to provide support for Ashley for several years. He openly admitted that to date, he has never provided support for Ashley and his justification for his conduct was that he was never requested to do so. It was also pointed out that the Child Enforcement Agency had been unable to require payments from him because his name does not appear on the birth certificate although 6 years have passed since the DNA test concluded he was the father of Ashley.

(Id. at 16-17.)

5

## Discussion

In their motion, defendants ask the court to: (1) remove plaintiff as "next friend" of the children; and (2) appoint Gailann and/or Dan N. as next friend or appoint a guardian ad litem to represent the children in this suit. Defendants argue that plaintiff is not suitable to serve as the children's next friend because his parental rights over Ashley were terminated and because his petition for guardianship over Christopher was denied, making him a legal stranger to both children. Defendants further argue that the facts of this case, as reflected in the findings of the probate court, demonstrate that plaintiff has been motivated in this litigation primarily by his own interests rather than those of the children.

Plaintiff counters that he should not be removed as next friend because the Manchester District Court decided the question of custody without properly notifying him, making that court's decision "null and void" as to him, and leaving him as the legal

6

custodian of Ashley and the "psychological parent" of Christopher.[2] The court does not agree.

As a preliminary matter, the court notes that plaintiff has no biological relationship with Christopher, and, given the February 14 probate court order, he is a legal stranger to both Christopher and Ashley.[3] At this point, DCYF is the general representative of both children. See T.W. by Enk v. Brophy, 124 F.3d 893, 895 (7th Cir. 1997) (explaining the distinction between a general representative and a special representative). And by virtue of her appointment as guardian ad litem by the probate court, Patricia Quigley, Esq., is the children's special

---

[2] The alleged illegality of the district court's decision is, in fact, the only issue raised in plaintiff's objection to defendants' motion to remove him as next friend; he presents no argument why, under the appropriate legal standard, he should be allowed to remain as the children's next friend.

[3] Because the state court decisions granting custody to DCYF, terminating plaintiff's parental rights, and denying his petition for a guardianship, are beyond review in this court under the Rooker-Feldman doctrine – as has been explained in the court's previous orders in this case – and because the United States Supreme Court has denied certiorari, see 122 S. Ct. 399, there can be no question that the award of custody to DCYF, the termination of plaintiff's parental rights over Ashley, and the probate court's denial of plaintiff's petition for guardianship over Christopher are all final decisions, fully binding on plaintiff, and no longer reviewable.

representative for certain purposes. Finally, it would appear from the order of the probate court that Ashley and Christopher are in the process of being adopted. When their adoptions become final, parental rights will be vested in their adoptive parents. The question before this court is whether plaintiff may continue in his role as assumed special representative/next friend in this case.

According to the Federal Rules of Civil Procedure, "[t]he capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile." FED. R. CIV. P. 17(b). In New Hampshire, "there are only two recognized ways in which a minor may take binding action in the enforcement or discharge of his legal rights, namely, through a duly appointed guardian acting within his powers, or through his next friend by proceedings in court." Roberts v. Hillsborough Mills, 85 N.H. 517, 519 (1932) (citing Clarke v. Town of Gilmanton, 12 N.H. 515, 517 (1842); Beliveau v. Amoskeag Mfg. Co., 68 N.H. 225, 227 (1894); Strong v. N.H. Box Co., 82 N.H. 221, 222, 223 (1926)). Because both Ashley and Christopher are minors, it is

8

indisputable that any legal action on their behalf must be brought either by a duly appointed guardian or by a next friend. See also T.W. by Enk, 124 F.3d at 895 ("To maintain a suit in a federal court, a child or mental incompetent must be represented by a competent adult.") (citing Gardner by Gardner v. Parson, 874 F.2d 131, 137 n.10 (3d Cir. 1989); 4 MOORE'S FEDERAL PRACTICE § 17.20[1], p. 17-87 (3d ed. 1997)).

As for the circumstances in which one person may represent another in federal court, the Federal Rules of Civil Procedure provide:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

FED. R. CIV. P. 17(c).

Here, plaintiff has no standing under the first sentence of FED. R. CIV. P. 17(c) to sue on behalf of either Ashley or Christopher. Because the probate court explicitly extinguished the parental rights arising from plaintiff's biological relationship to Ashley, and explicitly denied his motion to establish a fiduciary relationship with Christopher, plaintiff is in no sense a representative of the children. Because he is not their representative, the first sentence of FED. R. CIV. P. 17(c) does not authorize him to sue on their behalf. See Developmental Disabilities Advocacy Ctr., Inc. v. Melton, 689 F.2d 281, 285 (1st Cir. 1982) (holding that advocate for the disabled with no "natural or other official relationship" to disabled person had no standing to sue under first sentence of FED. R. CIV. P. 17(c)).

In addition to authorizing suits brought by a child's duly appointed representative, FED. R. CIV. P. 17(c) also allows a next friend or guardian ad litem to sue on behalf of an infant or incompetent person who does not have a duly appointed representative. That part of the rule does not apply here, however, because Ashley and Christopher have not one, but two

10

duly appointed representatives. DCYF, which has legal custody of the children, is their general representative, and Patricia Quigley, Esq., who has been appointed their special representative, at least with respect to proceedings in the probate court. However, even if FED. R. CIV. P. 17(c) did allow for representation beyond that already available to the children – a position that is not entirely meritless, given that the children's general representative is named as a defendant in this action[4] – plaintiff's right to assume status as the children's next friend is not absolute. Rather, when a person files suit in federal court on behalf of another who is legally incompetent, without benefit of a court appointment as a guardian ad litem, as plaintiff did in this case, the following rule applies:

> The purported "next friend" who brings suit bears the burden of proving his or her suitability according to three general criteria that are independent of the law of the forum state. The criteria are (1) an adequate explanation of why minor or incompetent may not bring the suit himself or herself; (2) a true dedication to the best interests of the minor or incompetent

---

[4] The language of FED. R. CIV. P. 17(c) "has generally been interpreted by the courts as permitting appointment of a next friend or guardian ad litem 'when it appears that the minor's general representative has interests which may conflict with those of the person he is supposed to represent.'" Developmental Disabilities Advocacy Ctr., 689 F.2d at 285 (quoting Hoffert v. Gen. Motors Corp., 656 F.2d 161, 164 (5th Cir. 1981)).

11

represented by the next friend; and (3) some
significant relationship with the minor or incompetent.

4 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 17.25[2] (3d ed. 2000)

(citing T.W. by Enk, 954 F. Supp. 1306, 1309 (E.D. Wis. 1996),

aff'd 124 F.3d 893, 896-97 (7th Cir. 1997)).


That Ashley and Christopher are minors is sufficient to

satisfy the first prong of the test outlined above.  But

plaintiff has failed to meet his burden on the second and third

prongs.  As to the second prong, plaintiff's conduct, as

reflected in the probate court's findings of fact, does not

demonstrate a true dedication to the best interests of the

children.  As the probate court pointed out, plaintiff has spent

approximately six years resisting and defying the directives of

DCYF, as well as various professionals involved in the children's

care, while failing to take the clearly identified steps

necessary to gain custody of the children.  Based upon the

findings of the probate court, plaintiff has shown himself to be

far more dedicated to pursuing personal disputes with DCYF than

to the best interests of the children.  Moreover, even if

plaintiff did satisfy his burden of proof on the second prong, he

12

cannot meet his burden on the third.  As a legal stranger to both children, plaintiff has no substantial cognizable relationship to them, much less a significant relationship.  Indeed, in his capacity as natural parent to Ashley, he has been found seriously wanting.  Accordingly, plaintiff is not suitable to act as next friend to Ashley or Christopher.  On that basis, defendants' motion to remove plaintiff as next friend is granted.

Because plaintiff is not qualified to maintain this suit on behalf of Ashley and Christopher, the court must next decide what is to become of this litigation, such as it is.  FED. R. CIV. P. 17(c) authorizes the court to appoint a guardian ad litem to represent the children in this action or to "make such other order as it deems proper" for their protection.  While defendants urge the appointment of Gailann and/or Dan N. (the children's current foster parents) as next friend or, alternatively, the appointment of a guardian ad litem, the better solution is to dismiss the case without prejudice to refiling, if appropriate and warranted, in the judgment of a responsible adult.

By dismissing the case without prejudice, the court: (1) avoids ruling on a dispositive motion for summary judgment which has been opposed by a now-disqualified representative (thereby avoiding a potentially adverse decision on the merits, to the childrens' prejudice); (2) protects the children from having their claim tried by counsel brought in at the last minute by either their foster parents or a guardian ad litem; and (3) preserves their cause of action, such as it is, which may be brought up to two years after each of them attains majority, see RSA 508:8 (1997). Both removal of plaintiff as next friend and dismissal of this case without prejudice are especially appropriate in light of the children's impending adoption. After the children have been adopted and parental rights have been consolidated in the adoptive parents, an appropriate decision as to whether to refile this case can be made, free from the conflicts of interest that inhere in the current situation, in which DCYF is both the children's general representative and a named defendant.

## Conclusion

For the reasons given, defendants' Motion to Remove Peter L. as "Next Friend" of Ashley W. and Christopher W. (document no. 64) is granted, and the case is dismissed without prejudice to refiling. Because the case is dismissed, defendants' motion for summary judgment (document no. 67) is moot. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 19, 2001

cc:  Paula J. Werme, Esq.
     Andrew B. Livernois, Esq.