Barry J. SMITH, individually and on behalf of his minor sons, Mack Smith and Barry Smith, Jr., Plaintiffs–Appellants,

v.

Dorlisa SMITH, et al., Defendants–Appellees.

No. 02–1521.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 9, 2002.[*]

Decided Oct. 9, 2002.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 1, 2002.

Before RIPPLE, KANNE, and ROVNER, Circuit Judges.

ORDER

In the Summer of 2001, thirteen-year-old Barry Smith, Jr., and twelve-year-old Mack Smith told police and a social worker that their father. Barry Smith, was physically abusing them. The Wisconsin Department of Health and Family Services removed the boys from their father's home and gave temporary custody to their mother, Dorlisa Smith. Three months later a state court found that the children were not in need of protection and ordered them

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a)(2).

returned to Mr. Smith. Mr. Smith, acting pro se on behalf of himself and his children, brought this civil rights suit alleging that Dorlisa Smith and several public and private employees conspired to remove the boys from their father. The district court granted the defendants' motions to dismiss, and Mr. Smith and his sons appeal. We affirm the district court's judgment dismissing Mr. Smith's claims, but vacate the judgment with respect to the children's claims and remand the case to the district court with instructions to dismiss their suit without prejudice.

I.

Barry Smith has had sole custody of Mack and Barry since his divorce from the boys' mother Dorlisa in March 1993. In June and July of 2001, when the boys were in their early teens, they began "acting out." Mack and Barry stole money from a relative's purse to give to their mother, and when Mr. Smith found out, he punished the boys by grounding them and taking away their television, video game, and telephone privileges. Seeking to avoid this punishment, the boys ran away to their mother's house. Mr. Smith called the police, who brought the boys home. Several days later the boys ran away again, and again Mr. Smith had the police retrieve them. On July 18 Barry provoked the family dog and was scratched and bitten on the arm.

Later that day Barry and Mack went to their mother's house, and this time Dorlisa called the police. Before doing so, she allegedly instructed Barry to tell the police that his father caused his arm injury by beating him with an extension cord. Officer Stewart responded to Dorlisa's call, and when she inquired about the marks on his arm, Barry told the officer that they were caused by his father whipping him with an extension cord. Officer Stewart, however, did not believe that the marks were consistent with welts from an extension cord, and after speaking with Mr. Smith, she concluded that Barry's injury could have been caused by the dog bite and that the boys were "making up stories." The officer returned the boys to their father's home but reported the incident to the Milwaukee Bureau of Child Welfare.

Shortly thereafter, Gail Michael, a social worker from the Bureau, began investigating. She interviewed Mr. Smith, the two boys, their mother, and their maternal grandmother regarding the incident. Mr. Smith denied abusing the boys. Mr. Smith thought the matter was closed until August 7, 2001, when Ms. Michael telephoned and informed him that the boys were again at their mother's house. She asked him to come over immediately. When he arrived, Ms. Michael informed him that the boys would remain with their mother. Mr. Smith told Ms. Michael that she would be violating his civil rights by taking them away from him, but she and Dorlisa allegedly laughed and said "whatever."

A detention hearing was held two days later before Judge Kevin Martens, who evidently approved the temporary placement. The state next commenced a Child in Need of Protection or Services ("CHIPS") proceeding by filing a petition in the circuit court. That petition, signed by Milwaukee County assistant district attorney JoAnn Hornak, recounted not only the alleged extension cord incident, but numerous other allegations of physical abuse by Mr. Smith that were related to Ms. Michael by the boys, their mother, and their maternal grandmother. The court dismissed the state's petition in December 2001, and the boys were returned to their father's custody.

The Smiths filed this action in November 2001 seeking injunctive relief and monetary damages under 42 U.S.C. §§ 1981, 1983, and 1985. They named as defendants Dorlisa Smith, Gail Michael, assistant district attorneys JoAnn Hornak and Patrick Kenney, Judge Martens, and three employees from a private child welfare agency. Innovative Family Partnerships ("IFP"). All of the defendants except Ms. Smith appeared and moved to dismiss. The district court dismissed the Smiths' claims against all of the defendants, including Ms. Smith, based on absolute or qualified immunity or, in the case of the private defendants, for failure to state a claim. Smith and his children appeal only as to their claims against Ms. Smith, Ms. Michael, and the IFP employees.

## II.

■ Before addressing the Smiths' arguments on appeal, we must confront a preliminary question–namely, whether Mr. Smith could bring this suit pro se on behalf of his minor children. To maintain a suit in a federal court, a child or mental incompetent must be represented by a competent adult, ordinarily a parent or relative. *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir.1997); Fed.R.Civ.P. 17(c). But although Johnson may bring this suit on the children's behalf, he may not do so without counsel. *See Navin v. Park Ridge Sch. Dist.*, 270 F.3d 1147, 1149 (7th Cir. 2001) (per curiam); *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 231 (3d Cir. 1998); *Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 124 (2d Cir.1998) (per curiam); *Johns v. County of San Diego*, 114 F.3d 874, 876–77 (9th Cir.1997); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir.1986) (per curiam). Because the choice to appear pro se is not a "true choice" for minors who cannot determine

their own legal actions, minors are entitled to trained legal assistance so that their rights may be fully protected. *See Cheung*, 906 F.2d at 61. The defendants, to their credit, brought this issue to the attention of the district court; but rather than enter judgment on the children's claims, the district court should have dismissed without prejudice. *See Johns*, 114 F.3d at 878; *see also Osei–Afriyie v. Medical College of Pa.*, 937 F.2d 876, 883 (3d Cir.1991) (vacating judgment entered against children and suggesting that on remand the father could retain counsel for his children, or the district court could either dismiss the children's claims without prejudice or enlist counsel to represent them).

## III.

We now turn to Mr. Smith's appeal. Mr. Smith's main contention is that the district court erred in dismissing his claims against social worker Gail Michael on the ground of qualified immunity. Qualified immunity protects government actors performing discretionary functions from liability so long as they do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Berman v. Young*, 291 F.3d 976, 983 (7th Cir.2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Mr. Smith alleges that Ms. Michael violated his substantive and procedural due process rights. Parents have a substantive due process right to care for and raise their children. *Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir.2000). But this right is not absolute: a parent's familial interests must be balanced with the state's interest in protecting children from parental abuse. *See id.* at 1019. The state's interest trumps the parent's if the state "has some definite and articulable evidence giving

rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* In addition, a parent has a right to procedural due process before the state may remove his or her children. We have stated that, at a minimum, due process requires that "government officials not misrepresent the facts in order to obtain removal of a child from his parents." *Id.* at 1020. And, further, it means that absent exigent circumstances the government may not remove a child from his home without an investigation and pre-deprivation hearing resulting in a court order of removal. *Id.*

Even assuming the truth of Mr. Smith's factual allegations and viewing them in the light most favorable to him, as we must, *see id.* at 1006, he cannot establish a due process violation here. Mr. Smith alleges that Ms. Michael had no justification for her emergency removal of the boys and that in fact she misrepresented reports of abuse in her CHIPS petition. To support this claim, he submitted the CHIPS petition to the district court and includes it in his appendix on appeal. The district court properly considered this petition without converting the motion to one for summary judgment, *see Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753–54 (7th Cir.2002), and so may we, *see Brokaw,* 235 F.3d at 1006. A plaintiff may provide additional facts and documents to support his allegations beyond the short and plain statement required by Rule 8 of the Federal Rules of Civil Procedure, but by doing so, the plaintiff may plead himself out of court. *See Thompson,* 300 F.3d at 754. That is precisely what Mr. Smith has done here.

■ The district court concluded that the allegations in the CHIPS petition confirm that Ms. Michael was justified in securing a temporary removal of the children. We agree. According to the CHIPS petition, Dorlisa Smith told Ms. Michael that Barry recently had complained to her that his father punched him in the jaw and whipped him with an extension cord. Ms. Smith further reported that Mack told her that his father punches them like they were "grown men." The boys' maternal grandmother stated that the boys complained to her of similar abuse. Notably, Ms. Michael also interviewed the boys, and Mr. Smith does not dispute that both boys told her that he was physically abusing them, including by punching them. And Barry also showed Ms. Michael the marks on his arm, which he iterated were caused by his father hitting him with an extension cord after accusing him of stealing. Moreover, as recounted in the CHIPS petition, Ms. Michael did not act on these allegations of abuse by removing the boys from Mr. Smith's custody until August 7. That day Ms. Michael received a call from another Milwaukee police officer. The officer said that Barry and Mack had once again fled to their mother's home claiming abuse. When Ms. Michael arrived the boys reported that their father had continued to whip them and punch them on their chest and legs. Barry related that his father had punched him and thrown him hard into the basement wall when he said he wanted to live with his mother. Mack, too, said that his father had punched him and thrown him down, and he reported to Ms. Michael that his chest was hurting as a result. Both boys said that they feared going home and wished to stay with their mother.

Mr. Smith cannot prove, in view of the allegations in her CHIPS petition, that Ms. Michael lacked an objectively reasonable basis for temporarily placing the boys with their mother. "When a child's safety is threatened, that is justification enough for action first and hearing afterward." *Loss-*

man v. Pekarske, 707 F.2d 288, 291–92 (7th Cir.1983). At the time of her August 7 decision, Ms. Michael knew that the boys had run away from their father's home several times in the past month: that they complained of physical abuse to their mother and grandmother; that they repeated those claims to police and to her; that Barry had marks on his arm that he said were caused by his father; and that both boys children were afraid to go home. Such circumstances are sufficient to raise a reasonable suspicion of imminent harm and thus justified Ms. Michael's assumption of temporary custody of the boys without a court order and hearing. See Berman, 291 F.3d at 984; Hatch v. Dep't for Children, Youth and Their Families, 274 F.3d 12, 24–25 (1st Cir.2001); Williams v. Pollard, 44 F.3d 433, 435 (6th Cir.1995); Hodorowski v. Ray, 844 F.2d 1210, 1217 (5th Cir.1988). Indeed, the state court apparently agreed, approving the temporary placement following the detention hearing two days later.

True, Mr. Smith does broadly assert that Ms. Michael falsified the CHIPS petition. But the only specific misrepresentation he alleges is that Ms. Michael omitted Officer Stewart's opinions that the marks on Barry's arm were made by a dog and that the boys were "making up stories." That omission was inconsequential because Ms. Michael reached her own conclusion about the marks after speaking with Barry directly and examining the marks herself. What is significant is that Mr. Smith has not alleged that Ms. Michael invented the other more serious allegations of abuse made by the boys themselves. Rather, the thrust of his claim seems to be that the boys, at the urging of their mother, lied about the abuse. That may well have been the case, but the fact that the allegations of abuse ultimately proved unfounded does not strip Ms. Michael of her entitlement to

qualified immunity. See Hatch, 274 F.3d at 25.

Mr. Smith also suggests that Ms. Michael knew the boys were lying but persisted in removing them from his custody as part of a conspiracy with Dorlisa Smith and several IFP employees. The district court rightly concluded that Mr. Smith failed to state a conspiracy claim against any of these defendants. To establish § 1983 liability through a conspiracy theory, Mr. Smith must demonstrate that the defendants reached an agreement to deprive him of his constitutional rights. Tierney v. Vahle, 304 F.3d 734, 739, 741 (7th Cir.2002); Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.1998). Mr. Smith's conspiracy allegations are vague. But under Fed. R.Civ.P. 8 a complaint need only put the defendant on notice of what he or she is charged with by alleging the parties, purpose, and approximate date of the conspiracy. Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir.2002). Under that liberal pleading standard, Mr. Smith's general allegations that Ms. Michael conspired with Dorlisa Smith to take the boys from him arguably are adequate. See Brokaw, 235 F.3d at 1016. Mr. Smith, however, again has asserted additional facts showing that his conspiracy theory is unfounded. It appears from Mr. Smith's complaint and brief in this court that–although couched in terms of "conspiracy"–what he actually alleges is that Ms. Smith provided false information to Ms. Michael. His only basis for the alleged conspiracy is the fact that she and Ms. Michael laughed and said "whatever" when he protested the placement of the children with her. Such facts are wholly insufficient to warrant a finding of conspiracy. See Tierney, 304 F.3d 734, 741. With respect to the IFP defendants, Mr. Smith's complaint fails to satisfy Rule 8's relaxed pleading requirements. Mr. Smith simply asserts that the IFP "joined in the conspiracy" to take his sons by

deliberately placing them in the home of their mother. There is no indication of when an agreement between the IFP employees and Ms. Michael was formed, or what the IFP employees' role was since they were not involved in Ms. Micheal's pre-hearing placement of the boys with Ms. Smith and are not mentioned in the CHIPS petition. Because we are unable to discern from Mr. Smith's complaint even a minimal description of their conduct, *see Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999), the conspiracy charge against the IFP employees was properly dismissed as well.

Accordingly, we AFFIRM the judgment as to Mr. Smith's claims, and VACATE and REMAND as to the children's claims with instructions to dismiss those claims without prejudice.