COURT OF APPEALS
DECISION
DATED AND FILED

May 25, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP476**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019FA70

**IN COURT OF APPEALS
DISTRICT III**

EMMA EKSTRAND,

   PETITIONER-APPELLANT,

 V.

MAXSONN MARSH,

   RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Polk County: JEFFERY ANDERSON, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Emma Ekstrand appeals an order dismissing her paternity action against Maxsonn Marsh in which she sought a determination of

the legal custody and physical placement of their daughter, Brooke.[1] The circuit court dismissed Ekstrand's action after concluding that Brooke had not lived with Ekstrand in Wisconsin for the necessary six months immediately preceding the Wisconsin action's commencement. The court therefore determined that "home state" jurisdiction under WIS. STAT. § 822.21(1)(a) (2019-20)[2] lied with North Dakota, where Ekstrand and Brooke lived prior to moving to Wisconsin.

¶2 On appeal, Ekstrand asserts the circuit court erred by focusing on where Ekstrand and Brooke were physically located during the relevant time period, rather than assessing the totality of the circumstances, including Ekstrand's subjective intent to move to Wisconsin. We conclude that the facts as found by the circuit court demonstrate that Brooke's home state when Ekstrand's suit was filed was North Dakota, even under Ekstrand's preferred "totality of the circumstances" analysis. We therefore affirm.

## BACKGROUND

¶3 The relevant facts are largely undisputed and are taken from evidentiary hearings on Marsh's motion to dismiss this action. Brooke was born to Ekstrand and Marsh on May 14, 2017, in Dickinson, North Dakota. Ekstrand and Marsh were in a relationship between February 2015 and September 2017, but they never married. They lived separately in North Dakota until 2016, when they moved into a house that they owned together.

---

[1] Consistent with the parties' practice, we use a pseudonym to refer to the minor child.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4 Ekstrand testified that the relationship grew "incredibly toxic," and she moved into a rented town home and then into a home that her mother was leasing, both of which were in Dickinson. In early September 2018, Marsh punched one of Ekstrand's friends.[3] Ekstrand then began "formulat[ing] a plan to … relocate" to Wisconsin.

¶5 Ekstrand eventually moved to Wisconsin, where she commenced the present action against Marsh on April 3, 2019, seeking a determination of Brooke's legal custody and physical placement. Ekstrand alleged in her petition that Brooke had lived with her in Polk County, Wisconsin, since October 2, 2018. Marsh had previously attempted to file a paternity action in North Dakota on February 4, 2019, but he was unable to accomplish service upon Ekstrand until April 26, 2019, making the action in Wisconsin the first-filed action.

¶6 Marsh filed a motion to dismiss the Wisconsin action, asserting that the circuit court lacked "home state" jurisdiction under WIS. STAT. § 822.21, Wisconsin's statute adopting the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[4] Marsh argued Wisconsin was not Brooke's "home state" because Brooke had not lived with Ekstrand in Wisconsin for a period of at least six consecutive months before Ekstrand filed the Wisconsin action. *See* WIS. STAT. § 822.02(7) (defining "home state"). Although Marsh acknowledged

---

[3] At trial, Marsh claimed the friend lunged at him and he acted in self-defense.

[4] A circuit court in Wisconsin always has subject matter jurisdiction to decide custody matters. *P.C. v. C.C.*, 161 Wis. 2d 277, 298, 468 N.W.2d 190 (1991). The statutory concept of jurisdiction under the UCCJEA is more akin to the concepts of competency and personal jurisdiction. *See id.*

3

Ekstrand had visited Wisconsin during the relevant time frame, he asserted that she and Brooke had continued to live in North Dakota throughout early 2019.

¶7 A circuit court commissioner ruled that Wisconsin had home state jurisdiction. The commissioner determined that Ekstrand had moved to Wisconsin "on or about September 19, 2018," the date she had completed a change-of-address form with the United States Postal Service (USPS) identifying her new address in Siren, Wisconsin. The commissioner found Ekstrand had informed her employer of her pending move on September 7, 2018, and had changed her driver's license to the Wisconsin address on October 2, 2018. The commissioner further found that, thereafter, Ekstrand had "sporadically" returned to North Dakota until October 31, 2018, while she finished her employment there. Marsh was found to have lied to the commissioner about threatening Ekstrand with harm after their breakup, and the commissioner regarded Ekstrand's surreptitious move to Wisconsin as being justified by her seeking "refuge from violence in North Dakota." Accordingly, the commissioner denied Marsh's motion.[5]

¶8 Marsh sought a de novo hearing before the circuit court, and the court set the matter for an evidentiary hearing. Ultimately, the court took testimony and other evidence over the course of three hearings. Relying on **Powell v. Stover**, 165 S.W.3d 322 (Tex. 2005), and emphasizing the "purposes behind the UCCJEA," the court concluded "that a child's physical location is a central factor to be considered when determining a child's home state."

---

[5] Based upon the court commissioner's decision that Wisconsin had home state jurisdiction, the North Dakota court dismissed Marsh's action without prejudice.

¶9     The circuit court discussed the evidence that had been received during the three hearings.  It noted that initially it had appeared that Ekstrand had worked in North Dakota for fourteen days during October of 2018, but Ekstrand's pay stubs appeared to indicate she had worked as many as eighteen days.  The court emphasized the testimony of Ekstrand's supervisor, to whom Ekstrand had given her notice of termination with the expectation that she would be giving her employer sufficient time to find another person.  Ekstrand's last day of work in North Dakota was October 31, 2018.  The court noted that testimony and evidence from Ekstrand's childcare provider generally corroborated the dates Ekstrand was working, indicating that Ekstrand had been in North Dakota for at least eighteen days in October 2018.  Moreover, it was undisputed that Ekstrand and Brooke had spent a few days at the beginning of October in South Dakota while attending a friend's wedding.  In all, the court concluded Brooke spent no more than five or six days in Wisconsin during the month of October 2018.

¶10     Based on the evidence, the circuit court determined that Ekstrand "was living in North Dakota at least until the end of October, 2018."  It further concluded the evidence demonstrated that Brooke had accompanied Ekstrand while in North Dakota during that month.  The court acknowledged that Ekstrand had taken some steps to relocate to Wisconsin, but it stated it was "factoring out [her] subjective intent to … move" and focusing on where Brooke was physically located.  It therefore found that Ekstrand's Wisconsin filing was premature, as the court could not exercise jurisdiction at the time of filing because North Dakota was Brooke's home state for at least a portion of the requisite six-month period.

¶11     The circuit court noted that because of the existence of parallel proceedings in North Dakota, there should have been a stay imposed in the Wisconsin proceedings pending communication with the North Dakota court.  *See*

5

WIS. STAT. § 822.26. The court therefore stayed the proceedings and conducted an on-the-record conversation with the North Dakota judge to determine whether North Dakota would accept jurisdiction. The North Dakota judge agreed that his state was the appropriate state to exercise jurisdiction. The court then entered an order transferring jurisdiction to North Dakota, providing for a sixty-day delay in dismissing the Wisconsin action pending any "unforeseen circumstances." The case was not returned to Wisconsin, and the Wisconsin action was dismissed at the expiration of the sixty days. Ekstrand appeals the order of dismissal.

## DISCUSSION

¶12 The UCCJEA provides "a mechanism for resolving interstate child custody disputes." *Davidson v. Davidson*, 169 Wis. 2d 546, 557, 485 N.W.2d 450 (Ct. App. 1992). Unlike prior laws, the UCCJEA sets forth "clear rules" that, in theory, always locate jurisdiction over custody proceedings in a single state. *Hatch v. Hatch*, 2007 WI App 136, ¶12, 302 Wis. 2d 215, 733 N.W.2d 648. Under the UCCJEA, "home state jurisdiction always receives priority, and other jurisdictional bases are available only when there is no home state, or where the home state declines jurisdiction." *Id.* The determination of jurisdiction under the UCCJEA is a question of law, which we review de novo. *N.J.W. v. State*, 168 Wis. 2d 646, 652, 485 N.W.2d 70 (Ct. App. 1992).

¶13 Ekstrand's sole argument on appeal is that the circuit court failed to apply the correct legal standard when it determined that it did not have "home state" jurisdiction to make an initial child custody determination under WIS. STAT.

§ 822.21(1).[6] This argument depends on the application of § 822.21(1)(a), which describes the primary way in which circuit courts of this state may exercise jurisdiction to make an initial child custody determination. Under subsec. (1)(a), as relevant here, a court has such jurisdiction if "[t]his state is the home state of the child on the date of the commencement of the proceeding." "Home state" means "the state in which a child lived with a parent … for at least 6 consecutive months immediately before the commencement of a child custody proceeding." WIS. STAT. § 822.02(7). "A period of temporary absence" is part of the home state period. *Id.*

¶14 As suggested by the "commencement" language of WIS. STAT. § 822.02(7), the UCCJEA requirements must be met at the commencement of the proceedings. *P.C. v. C.C.*, 161 Wis. 2d 277, 302, 468 N.W.2d 190 (1991). The parties concur that because this action was commenced on April 3, 2019, Wisconsin is considered Brooke's "home state" if she was living in Wisconsin no later than October 3, 2018. Ekstrand contends she and Brooke began living in Wisconsin on September 28, 2018, when they traveled to Wisconsin for the first time with the subjective intent to "remain permanently." Ekstrand argues that after that date, their return trips to North Dakota were merely "temporary absence[s]" under § 822.02(7). Marsh, on the other hand, contends "the overwhelming evidence shows that while Ekstrand was making plans in September and October 2018 to move to Wisconsin, she did not actually move there until November 1, 2018 at the very earliest."

---

[6] Ekstrand's challenge on appeal appears to be limited to the legal analysis the circuit court applied. We do not discern her arguments to challenge any of the court's factual findings as clearly erroneous.

¶15 The parties also agree that no Wisconsin case has addressed precisely what it means for a child to have "lived with a parent" in a claimed home state for purposes of WIS. STAT. § 822.02(7). Ekstrand criticizes *Powell*'s focus on the "child's physical location" in the preceding six months, even though one of the main cases she relies on appears to acknowledge the significance of physical presence. *See Garba v. Ndiaye*, 132 A.3d 908, 913 (Md. App. 2016). Ekstrand argues that when a child is not continuously present in the alleged home state during the six months prior to filing, the proper test to apply is *Garba*'s "totality of the circumstances" test for determining whether the child's absence was merely temporary.[7] *See id.* at 914-15.

¶16 We need not adopt *Powell*, *Garba* or any other case as the definitive interpretation of WIS. STAT. § 822.02(7), because under any of the proposed formulations, the outcome is the same in this case. The problem presents itself because Brooke's claimed period of "temporary absence" occurred at the inception of the six-month period in which Ekstrand claims she and Brooke lived in this state. And while Ekstrand undoubtedly had a subjective intent to move to Wisconsin, the appellate record fails to show that she had the intent to make Wisconsin her permanent home as of October 3, 2018, let alone that she had actually accomplished that task.

---

[7] Ekstrand relies on *In re Calderon-Garza*, 81 S.W.3d 899 (Tex. App. 2002), for the proposition that Brooke should be deemed "temporarily absent" from Wisconsin because she was first present here in September. *Calderon-Garza*, though, involved a parent from Mexico who gave birth to a child in Texas and argued that her trip to the United States was merely a temporary absence for purposes of UCCJEA. *Id.* at 903. The child had never been to Mexico, prompting the court to make the unremarkable observation that one cannot be temporarily absent from a place where one had never lived. *Id.* Contrary to Ekstrand's argument, *Calderon-Garza* did not hold that a court must conduct a "temporary absence" inquiry merely because a child becomes present in the claimed home state.

¶17    Rather, both Ekstrand's testimony and the facts as found by the circuit court show that she intended to accomplish a move to Wisconsin in the general September-October time frame, but not as of any date certain. At some point prior to September 7, it is apparent Ekstrand had decided to move from Dickinson to her parents' home in Siren, Wisconsin. On September 7, Ekstrand's parents made a trip to North Dakota and picked up some of her belongings. Also on that date, Ekstrand, who had worked as the general manager of the Brickhouse Grill in Dickinson, gave her employer notice that she would be ending her employment in "about" six weeks, which Ekstrand believed was enough time to find and train a replacement. At some point prior to September 14, Ekstrand provided her employer with the Wisconsin address, and on September 19, she filed a change-of-address form with the USPS. Ekstrand also began looking for employment in Wisconsin and applied for two jobs.

¶18    Ekstrand scheduled a job interview in Wisconsin on October 2, 2018. She departed North Dakota for Wisconsin on September 28, and during that visit she received a job offer and applied for a Wisconsin driver's license. Ekstrand traveled from Wisconsin to South Dakota for a friend's wedding on October 3rd or 4th, and then traveled from South Dakota to North Dakota to work in Dickinson throughout October. The circuit court found that Ekstrand worked in Dickinson on October 9th through the 13th, the 16th through the 21st, the 23rd and 24th, and October 27th through the 31st.[8]    Ekstrand's child care invoices in Dickinson generally corresponded to these dates.

---

[8] The circuit court acknowledged there were disputes about whether Ekstrand worked on October 20 and 26, 2018. Excluding these dates has no bearing on our determination.

¶19    Ekstrand acknowledged that moving to Wisconsin was a "slow process" and that it was not until mid-October when she had "most of her belongings" in Wisconsin.  Ekstrand began looking for child care in Wisconsin for Brooke in September, but she did not register her until "early October," and Brooke did not start her Wisconsin day care until November 2018.  Indeed, Brooke remained in day care in Dickinson throughout October 2018.  And Ekstrand worked in Dickinson throughout October; she did not start her new job in Wisconsin until November 2018.  While Ekstrand was in North Dakota in October 2018, she continued staying in the residence leased by her mother, just as she had in the previous months.  In all, Ekstrand acknowledged being present in Wisconsin on only five or six days in October, which appears to have included the dates at the beginning of October as well as a very brief trip to this state around October 25th.

¶20    The facts demonstrate that Brooke primarily lived with Ekstrand in Dickinson, North Dakota, during October 2018, and that Ekstrand's working and living in Dickinson was not merely a "temporary absence" from Wisconsin.  Prior to her efforts to move to Wisconsin, North Dakota is where Ekstrand made her home.  While there was clearly a transitory period in which Ekstrand formed the intent to move to Wisconsin and began taking the necessary steps to do so, we cannot conclude—even under the "totality of the circumstances" test proposed by Ekstrand—that Brooke "lived" with Ekstrand in Wisconsin for at least six consecutive months immediately preceding the commencement of the paternity action in this state.  The circuit court properly determined North Dakota was Brooke's "home state" for purposes of WIS. STAT. ch. 822.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.